UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Antoine Mayes, *Petitioner*, – against – United States, *Respondent*. | 1:12-CR-0385 (ARR) 1:17-CV-6789 (ARR) Not for Publication Opinion & Order |

ROSS, United States District Judge:

After a jury trial, the petitioner was found guilty of, *inter alia*, racketeering; unlawful use, possession, and discharge of firearms, including a machinegun, in furtherance of racketeering; three counts of attempted murder in aid of racketeering; and three counts of unlawful use, possession, and discharge of firearms, in furtherance of the three attempted murders. I sentenced the petitioner to 110 years in prison, of which 30 were the statutory minimum for the machinegun conviction and 75 were the statutory minimum for the three other firearm convictions. *See* 18 U.S.C. § 924(c). This judgment was affirmed on direct appeal to the Second Circuit. *United States v. Mayes*, 650 F. App'x 787 (2d Cir.), *cert. denied*, 137 S. Ct. 526 (2016). The petitioner now seeks to set aside these four gun convictions, which compose the vast majority of his sentence, on the grounds of ineffective assistance of counsel and lack of due process. For the reasons explained below, I deny the petition.

## BACKGROUND

The defendants—the petitioner and his brother, Anthony Mayes Jr.—were jointly tried before a jury in my courtroom in Spring 2014. They stood accused of running a violent criminal enterprise that involved the selling of cocaine and guns in the East New York

1

section of Brooklyn and in Williamston, North Carolina. They were also accused of numerous violent acts in support of their criminal enterprise. The defendants had separate counsel, and neither defendant testified in his defense.

The charges relevant to the petition mostly relate to a rivalry between members of the defendants' enterprise and another group that also sold drugs in East New York.[1] The defendants' group was centered around Ashford Street, and the rival group around nearby Atkins Avenue. According to a former member of the Ashford group, Simeon Hall, the defendants "started having problems" with the Atkins group in 2008, and in particular with one of its members, Dupree Gales, who was understood to be set to testify in a murder trial against someone in the Ashford group. Trial Tr. 2423–25, ECF No. 283; *see also id.* at 2650. The petitioner and Hall discussed the need to "take [Gales] out," and the petitioner devised a plan to have someone shoot Gales. *Id.* at 2426.

Hall, however, was friendly with a member of the Atkins group named Travis Timmons, and Hall approached Timmons and recommended that he distance himself from Gales. *Id.* at 2430–31, 2651–52. Timmons in turn warned Gales that Gales was in danger from the Ashford group, prompting Gales to decide to strike first. *Id.* at 2652–53.

In the evening of June 4, 2008, Gales, Timmons, and two of their associates went over to Ashford Street and shot three members of the Ashford group. Trial Tr. 1534–36, ECF No. 280; Trial Tr. 2431–32, 2552–57, 2653–56. That night, Hall and the defendants agreed that they needed to arm themselves, and the following day the petitioner gave Hall a .357. Trial Tr. 2434–35. At trial, counsel for the government asked Hall, "What kind of gun was that 357? Was it a revolver? A semiautomatic?" *Id.* at 2435. Hall responded that "[i]t was an automatic." *Id.*

---

[1] The following narrative is derived from witness testimony at trial.

Later that day, Hall encountered Gales on the street. *Id.* at 2435–36. Hall immediately retrieved a 9-millimeter handgun from a house used by the Ashford group and confronted Gales. *Id.* at 2436–37. This confrontation culminated in Hall shooting at Gales, who got away despite being hit in the arm. Trial Tr. 1537–38; Trial Tr. 2438, 2620, 2659.

Tensions continued. At some point later that summer, Timmons and Gales saw the defendants driving down the street, in separate cars, and shot at one of them. Trial Tr. 2445, 2669–70.[2] In order to get revenge, the defendants, Hall, and another member of the Ashford group, Johnny Mercado, began waiting outside Timmons's house at night in order to catch him leaving and shoot him. *Id.* at 2445–46. On the night of September 9, 2008, while driving around, Hall and Mercado spotted Timmons on the street. Trial Tr. 2355–56, ECF No. 282; Trial Tr. 2381–85, 2447. They immediately drove to pick up the petitioner, and then drove to pick up another member of their group, Don Johnson, from the group's house. Trial Tr. 543, ECF No. 220; Trial Tr. 2447. They then drove back to the area where Timmons had been seen, pointed Timmons out to Johnson, and let Johnson out of the car. Trial Tr. 544–45; Trial Tr. 2448. Either Hall or the petitioner gave Johnson a 9-millimeter,[3] and both instructed him to shoot Timmons. Trial Tr. 545–46; Trial Tr. 2448–49. Johnson complied, approaching Timmons and firing about fifteen shots at him. Trial Tr. 548–49; Trial Tr. 2449. Timmons was hit, but survived. Trial Tr. 551; Trial Tr. 2449–50, 2672.

The third attempted murder came a year later. On September 20, 2009, Hall and the petitioner were riding in a van driven by another associate of theirs, Willie Flowers, when they unexpectedly saw Gales and other members of the Atkins group in a car. Trial Tr.

---

[2] Timmons testified that they shot at the petitioner's car, but Hall testified that it was Mayes Jr.'s car that Timmons shot. *See* Trial Tr. 2445, 2670–71.

[3] Hall testified that he gave Johnson the gun, but Johnson testified that the petitioner had given it to him. *See* Trial Tr. 546; Trial Tr. 2448.

3

2240–42; Trial Tr. 2463–64, 2638–39. The petitioner had Flowers drive around the block, and the petitioner took a 9-millimeter from Hall, saying that he would "show [Hall] how to shoot." Trial Tr. 2463–64. When they came back around the block, they saw that the car had parked, and Flowers drove past it. *Id.* at 2465. The car then began following their van, including through a U-turn, at which point the petitioner had Flowers execute another U-turn and stop the van in the middle of the street. *Id.* The petitioner jumped out of the van and fired the gun at the car containing Gales and his associates. *Id.* at 2465–66. Gales and another man were hit. Trial Tr. 2242; *see also* Trial Tr. 1540–41.

In addition to the testimony about those shootings, there was also witness testimony that could support a jury finding that the petitioner had used a machinegun[4] in furtherance of his racketeering activity. Most notably, Johnson testified that Mayes Jr. once "told [him] about one incident where [the petitioner] shot a block up with a Tec." Trial Tr. 487. Johnson explained that a "Tec" is "a fully auto gun," which means that "[i]t fires round after round when you squeeze the trigger." *Id.* In addition, Hall testified that on one occasion the petitioner was carrying an Uzi, then offered that he thought that it might have been a Tec-9, but then reverted to calling it an Uzi for the rest of his testimony. Trial Tr. 2467–69.[5]

After a two-week trial, the jury rendered a unanimous verdict of guilty on all counts for both defendants. Of relevance in this matter, the jury found the petitioner guilty of (1) racketeering, in violation of 18 U.S.C. § 1962(c); (2) unlawful use, possession, brandishing, and discharge of one or more firearms, including a machinegun, in furtherance

---

[4] "The term 'machinegun' means any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." 26 U.S.C. § 5845(b); *see* 18 U.S.C. § 921(a)(23).

[5] Whereas Johnson had previously testified that a "Tec" is "a fully auto gun" (Trial Tr. 487), all evidence at trial was that an Uzi is a semiautomatic weapon (*see, e.g.*, Trial Tr. 2250, 2265, 2270).

4

of racketeering, in violation of § 924(c)(1); (3) three counts of attempted murder (of Gales, of Timmons, and then of Gales again) in aid of racketeering, in violation of § 1959(a)(5); and (4) three counts of unlawful use, possession, brandishing, and discharge of one or more firearms, in furtherance of attempted murder in aid of racketeering, in violation of § 924(c)(1).

## DISCUSSION

Under 28 U.S.C. § 2255, a federal prisoner may petition his sentencing court to "vacate, set aside, or correct [his] sentence" "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States." § 2255(a). Generally speaking, however, "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." *Massaro v. United States*, 538 U.S. 500, 504 (2003). One important exception to this rule is that "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." *Id.* at 509.

Here, the petitioner *pro se* seeks to set aside his sentences on his 18 U.S.C. § 924(c)(1) convictions, because, he argues, they were imposed in violation of his constitutional rights—namely, his Fifth Amendment right to due process and his Sixth Amendment right to assistance of counsel. For the reasons discussed below, they were not, so I deny the petition.

A.  **The petitioner's convictions under 18 U.S.C. § 924(c) do not violate due process.**

The Fifth Amendment's guarantee of due process is violated when the government imposes criminal penalties under a "law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015). In *Johnson*, the Supreme Court considered § 924(e)(2)(B)(ii), which defined "violent felony" as a felony that "involves

5

conduct that presents a serious potential risk of physical injury to another." *See* 135 S. Ct. at 2555–56. The Court ruled that this "residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges" and therefore that "[i]ncreasing a defendant's sentence under the clause denies due process of law." *Id.* at 2557.

The petitioner was sentenced not under § 924(e) but under § 924(c), which provides for increased sentences for the use of firearms in connection with "any crime of violence or drug trafficking crime." § 924(c)(1)(A). For this purpose, the statute defines "crime of violence" as one that "is a felony" and:

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

§ 924(c)(3). The petitioner received increased sentences under § 924(c)(1) based on my ruling at trial that his charges of racketeering and of attempted murder in aid of racketeering were crimes of violence.[6]

The petitioner argues that these sentences should be vacated because attempted murder is not a crime of violence as defined in § 924(c)(3)(A) and because, in light of *Johnson*, § 924(c)(3)(B) is impermissibly vague. Mot. 5, ECF No. 306.

As a threshold matter, the government objects that this claim is "procedurally barred," as the petitioner failed to raise it in his direct appeal to the Second Circuit. Gov't Br. 6, ECF No. 310. The petitioner explains that his failure to raise this claim on direct appeal

---

[6] Whether racketeering is a "crime of violence" under § 924(c) depends on whether at least two of its predicate offenses are crimes of violence. *United States v. Ivezaj*, 568 F.3d 88, 96 (2d Cir. 2009). Because the three attempted murders that the petitioner was found guilty of at trial were also found to be proven racketeering acts in support of his racketeering conviction, the following analysis concerns only the crime of attempted murder.

6

was due to the *Johnson* decision coming down after his trial was complete. Mot. 5. The petitioner was sentenced on January 8, 2015, and *Johnson* was decided on June 26, 2015 (135 S. Ct. 2551). But the petitioner's appeal was not filed in the Second Circuit until November 6, 2015 (*see* Brief and Appendix for Appellant Antoine Mayes, *Mayes*, 650 F. App'x 787 (No. 13-2331)), and the petitioner offers no justification for failing to raise this argument then. Because the argument was available to the petitioner at the time of his direct appeal, he is likely barred from raising it now. *See United States v. Thorn*, 659 F.3d 227, 233 (2d Cir. 2011).

Nevertheless, even were it not procedurally barred, the petitioner's argument would fail on the merits. Since the briefing of the instant petition, binding case law has resolved some of the issues that the petitioner presents. First, in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), the Supreme Court ruled that another, more similar statutory "crime of violence" definition was *also* unconstitutionally vague. *Id.* at 1223.[7] This decision would certainly seem to favor the petitioner's position.

More recently, however, the Second Circuit decided *United States v. Barrett*, ___ F.3d ____, No. 14-2641-cr, 2018 WL 4288566 (2d Cir. Sept. 10, 2018), a case that is even more directly on point, as it pertains to § 924(c)(3) itself. *See* 2018 WL 4288566, at *1. In *Barrett*, the Second Circuit distinguished the statutes at issue in *Johnson* and *Dimaya* as being applied by courts to determine whether "crimes . . . of *prior* conviction fit federal definitions of violent crimes so as to expose a defendant to enhanced penalties or other adverse consequences in *subsequent* federal proceedings." *Id.* at *12. By contrast, the court explained, § 924(c)(3) "is not concerned with prior convictions. It pertains only to § 924(c)(1) crimes of

---

[7] In *Dimaya*, the Court considered 18 U.S.C. § 16(b), which defined "crime of violence" to include a felony that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *See* 138 S. Ct. at 1211. That language, of course, is identical to the language of § 924(c)(3)(B), which the petitioner is challenging.

7

*pending* prosecution." *Id.* Therefore, "the trial jury, in deciding whether a defendant is guilty of using a firearm 'during and in relation to any crime of violence,' can decide whether the charged predicate offense is a crime of violence as defined in § 924(c)(3)(B)." *Id.* (quoting § 924(c)(1)(A)). That obviates any due-process concerns, because "no constitutional vagueness inheres in a substantial-risk definition of a crime of violence when applied to case-specific conduct." *Id.* at *10.

In this case, of course, the question whether attempted murder was a crime of violence was not submitted to the jury. But the evidence at trial was that the petitioner encouraged, ordered, or participated in three attempted murders, each of which involved the victims being shot. It was thus "harmless error beyond a reasonable doubt" to "fail[ ] to submit a § 924(c)(3)(B) inquiry to the jury." *Id.* at *14. "[T]he trial evidence here admits no rational finding but that [each attempted murder] was a crime of violence under [§ 924(c)(3)(B)]". *Id.*[8]

---

[8] Because the attempted murders qualify as crimes of violence under § 924(c)(3)(B), I do not answer whether they also qualify under § 924(c)(3)(A). I note, however, that the question is not as simple as it may appear. *But see United States v. Scott*, 681 F. App'x 89, 95 (2d Cir. 2017) ("Attempted murder in the second degree is a crime unmistakably involving 'an attempted use . . . of physical force' within § 924(c)(3)(A)." (quoting statute)), *cert. denied sub nom. Smith v. United States*, 138 S. Ct. 642 (2018). Under New York law, an attempted-murder conviction may lie where the defendant intends to murder and takes nonviolent preparatory steps toward murder but his plan is abandoned or thwarted before he even attempts any violent action. *See, e.g.*, *People v. Naradzay*, 900 N.E.2d 924, 928–29 (N.Y. 2008). Accordingly, though many attempted murders—such as those that the petitioner was convicted of—may in fact be crimes of violence under § 924(c)(3)(B), attempted murder under New York law may not *categorically* be a crime of violence under § 924(c)(3)(A). *Cf. Montoya v. United States*, No. 1:16-cv-00084-TC, 2016 WL 6810727, at *7 (D. Utah Nov. 17, 2016) ("On its merits, attempted murder in Utah does not qualify as a crime of violence because, as an inchoate offense, it does not require use of force as an element.").

B.  **The petitioner has not alleged constitutionally ineffective assistance of counsel.**

The remainder of the petitioner's arguments pertain to his contention that he received ineffective assistance of counsel.

"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was deficient." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The court must then determine whether, in light of all the circumstances," the complained-of conduct fell "outside the wide range of professionally competent assistance." *Id.* at 690. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* at 687. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The petitioner bears the burden of making both showings. If the court can "dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice," then it "need not determine whether counsel's performance was deficient." *Id.* at 697.

Here, the petitioner argues that his trial counsel was ineffective for: (1) failing to object to the jury instruction regarding § 924(c), (2) failing to conduct effective cross-examination of Hall and Johnson, (3) failing to make a hearsay objection to a portion of Johnson's testimony, (4) failing to move for a judgment of acquittal on the machinegun charge for lack of sufficient evidence, and (5) failing to call a firearms-and-ballistics expert to testify at trial. Mot. 3–8. Each of these arguments fails.

1. *It was not ineffective assistance for trial counsel not to request that the question whether the petitioner had committed crimes of violence be submitted to the jury.*

As discussed above, at the conclusion of the trial, I instructed the jury that the petitioner's racketeering and attempted-murder charges were crimes of violence under § 924(c)(3) and thus, if the jury found the petitioner guilty of those charges, those charges

could validly serve as predicate offenses for the petitioner's § 924(c)(1) charges. Trial counsel did not object.

The petitioner argues that counsel's failure to object constituted defective performance, citing *United States v. McDaniels*, 147 F. Supp. 3d 427 (E.D. Va. 2015), which found that "[t]he phrase 'crime of violence' is an element of § 924(c)—rather than a sentencing factor—and therefore 'must be submitted to a jury and found beyond a reasonable doubt'" (*id.* at 432 (quoting *Alleyne v. United States*, 570 U.S. 99, 108 (2013))). The reasoning of *McDaniels* is well taken—particularly in light of *Barrett*—but submitting § 924(c)(3) determinations to the jury was simply not the practice in the Second Circuit at the time of the petitioner's trial. *See United States v. Dervishaj*, 169 F. Supp. 3d 339, 344 n.8 (E.D.N.Y. 2016) (observing that those courts that have held "that a determination under § 924(c)(3) must be 'submitted to a jury properly instructed as to the definition of a crime of violence' . . . are not . . . in the Second Circuit, which, up to now, has repeatedly applied the categorical approach to § 924(c)(3)(B)" (quoting *United States v. Monroe*, 158 F. Supp. 3d 385, 392 (W.D. Pa. 2016))). Trial counsel's failure to object thus did not "f[a]ll below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688; *see, e.g.*, *Fore v. Ercole*, 594 F. Supp. 2d 281, 305 (E.D.N.Y. 2009) ("[T]rial counsel could have reasonably believed that [the objection] would have been utterly futile . . . , and counsel cannot be deemed incompetent for failing to predict [a change in law].").

The petitioner argues that trial counsel had a "constitutional duty" to object even if he believed that it would have been "futile." Reply Br. 2 (citing *Bousley v. United States*, 523 U.S. 614, 623 (1998)). But the petitioner misapprehends *Bousley*. That case bars a habeas petitioner from bringing a claim that he failed to bring on direct appeal simply because the "claim was 'unacceptable to that particular court at that particular time.'" 523 U.S. at 623

10

(quoting *Engle v. Isaac*, 456 U.S. 107, 130 n.35 (1982)). It says nothing about ineffective assistance of counsel. The standard for procedural default under *Bousley* is more exacting than *Strickland*'s requirement that counsel be "reasonably competent." *Sanchez v. Lee*, No. 10 Civ. 7719(PKC)(AJP), 2011 WL 924859, at *33 (S.D.N.Y. Mar. 16, 2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 110 (2011)), *adopted by* 2011 WL 3477314 (S.D.N.Y. Aug. 8, 2011), *aff'd*, 508 F. App'x 46 (2d Cir. 2013).

In any event, the petitioner suffered no prejudice, since the jury, had they been instructed as the petitioner now wishes, would surely have found that the three attempted murders did amount to crimes of violence. For the same reason that the failure to submit the § 924(c)(3)(B) determination to the jury was harmless error (*see supra* Section A), trial counsel's failure to object to the jury instruction did not prejudice the petitioner. This ineffective-assistance claim thus fails.

> *2. The petitioner has failed to demonstrate that trial counsel's cross-examinations were constitutionally ineffective.*

Next the petitioner asserts that trial counsel failed him through deficient cross-examination of Hall and Johnson. On cross-examination, trial counsel did not inquire into (a) Johnson's testimony that a "Tec" is "a fully auto gun" and that he heard that the petitioner "shot a block up with a Tec" (Trial Tr. 487), (b) Hall's testimony that the petitioner gave him a .357 that "was an automatic" (Trial Tr. 2435), or (c) Hall's confused testimony that he saw the petitioner either with an Uzi or with a Tec-9 (*see id.* at 2467–69). The petitioner argues that the "Tec" and the .357 in question were not automatic, and that trial counsel should have asked Johnson and Hall on cross-examination to describe these

guns in order to determine whether they truly fit the statutory definition of a "machinegun." Mot. 7.[9]

The government makes no cogent response to this argument.[10] But it too fails.

"Decisions whether to engage in cross-examination, and if so to what extent and in what manner" "'fall squarely within the ambit of trial strategy, and, if reasonably made' cannot support an ineffective assistance claim." *United States v. Eisen*, 974 F.2d 246, 265 (2d Cir. 1992) (quoting *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987)). Here, the petitioner gives no indication that trial counsel had any idea that these were not automatic guns, without which there is no reason for trial counsel to have believed that further testimony about the guns would have helped his client's cause. With regard to Johnson's testimony, the petitioner also presents no basis for believing that cross-examination would have been fruitful. Johnson had no first-hand knowledge of the gun; he testified that he was "told" by Mayes Jr. that the petitioner had "shot a block up with a Tec." Trial Tr. 487. The petitioner would have had trial counsel ask Johnson whether "the particular 'Tec' that coconspirator Anthony Mayes described" was "a 'fully auto gun'" (Mot. 7), but the petitioner

---

[9] The petitioner also argues that "the Government, in advance of trial, knew" that the "Tec" and the .357 that Johnson and Hall testified about were "indeed not automatic" but failed to correct Johnson's and Hall's misleading testimony. Mot. 7. He does not explain how the government "knew," however, nor does he offer any evidence that would support these assertions. *Cf.* Pet'r Br. 9, ECF No. 306-1 ("No weapons were produced at trial.").

In any event, none of the grounds for relief presented in the § 2255 petition include prosecutorial misconduct. And to bring such claims now, the petitioner would need to "establish 'cause and prejudice' or 'actual innocence.'" *Garafola v. United States*, 909 F. Supp. 2d 313, 328 (S.D.N.Y. 2012). His petition argues neither, and thus any implied prosecutorial-misconduct claims are procedurally barred.

[10] The government does argue, in a footnote, that "Hall testified that the .357 was a revolver—not a machinegun." Gov't Br. 9 n.7 (citing Trial Tr. 2468). The petitioner, however, is clearly referring to Hall's testimony about an "automatic" .357 that he received from the petitioner in June of 2008 (*see* Trial Tr. 2435), and not the ".357 revolver" that the petitioner gave Hall around the end of that year (*see id.* at 2468).

offers no evidence that Johnson wouldn't have affirmed that it was, or that he had been told that it was.

"Although it may have been preferable for [trial] counsel to pursue this line of questioning, the failure to do so does not rise to the level of deficient representation." *Eze v. Senkowski*, 321 F.3d 110, 127 (2d Cir. 2003). This claim is denied.[11]

> 3. *The petitioner was not prejudiced by trial counsel's failure to make a hearsay objection that would have been overruled.*

The petitioner also objects to trial counsel's lack of a response to Johnson's testimony in a second way: he argues that trial counsel should have objected that it was inadmissible hearsay. *See* Pet'r Br. 7, ECF No. 306-1. The government responds that the testimony was not hearsay because it "furthered the criminal conspiracy." Gov't Br. 9; *see* Fed. R. Evid. 801(d)(2)(E) (defining as not hearsay statements "offered against an opposing party" that are "made by the party's coconspirator during and in furtherance of the conspiracy"). In reply, the petitioner argues that Johnson's conversation with Mayes Jr. was merely "idle chatter." Reply Br. 3.

"[S]tatements between coconspirators that may be found to be in furtherance of the conspiracy include statements that provide reassurance, or seek to induce a coconspirator's assistance, or serve to foster trust and cohesiveness, or inform each other as to the progress or status of the conspiracy." *United States v. Maldonado-Rivera*, 922 F.2d 934, 958–59 (2d Cir. 1990). Among the types of statements that the Second Circuit has ruled further a conspiracy

---

[11] As to Hall's conflicting testimony regarding whether he saw the petitioner with a (semiautomatic) Uzi or a Tec-9, I also find that this testimony did not prejudice the petitioner. After Hall said that he thought that the gun "was a Tec-9," he then corrected himself by saying, "Uzi." Trial Tr. 2467. He then referred to the gun again as "the Uzi" and responded yes to the prosecutor specifically asking, "Antoine had an Uzi?" *Id.* at 2468. In that same line of questioning, Hall referred to the gun as "the Uzi" twice more (*id.* at 2469), and on summation, the prosecutor referred to the gun as "an Uzi" as well (Trial Tr. 2995, ECF No. 279). Cross-examination to clarify whether this gun was an Uzi or a Tec-9 would have been cumulative and unnecessary.

13

are those made to a coconspirator "to identify other co-conspirators" and "to inform [a coconspirator] about the persons with whom he would be working." *United States v. Diaz*, 176 F.3d 52, 87 (2d Cir. 1999). Mayes Jr.'s statements to Johnson about the petitioner could easily be classified as such.

Accordingly, "there were sound evidentiary bases for the admission of the challenged co-conspirator statements and, therefore, trial counsel was not ineffective for failing to object." *Id.* at 113. The claim fails.

> 4. *The petitioner was not prejudiced by trial counsel's failure to move for a judgment of acquittal on the specific grounds now urged by the petitioner.*

The petitioner also argues that trial counsel should have moved for a judgment of acquittal on the ground that there was insufficient evidence for the jury to find the petitioner guilty of possessing a machinegun in furtherance of racketeering. Mot. 6. Trial counsel did move for a directed verdict after the trial, but the motion focused on the purported insufficiency of the evidence for a conviction on racketeering and, thus, on all the "racketeering-dependent counts." Pet'r's 29(c) Br. 2, ECF No. 208. That is, trial counsel attempted to obtain an acquittal for the petitioner on the vast majority of the counts on which he was found guilty, rather than the single machinegun count.

It was far from unreasonable for trial counsel to attempt to knock out at once nearly all the charges against his client—including the machinegun charge—rather than making a particular argument that would, if accepted, have reduced the petitioner's lengthy mandatory sentence by less than a third. *Cf. Weingarten v. United States*, 865 F.3d 48, 53 (2d Cir. 2017) ("It is the very function of an effective legal counselor to select among the available arguments and raise only 'the most promising issues for review.'" (quoting *Jones v. Barnes*, 463 U.S. 745, 752 (1983))), *cert. denied*, 138 S. Ct. 1309 (2018). With the benefit of hindsight, the petitioner may now wish that trial counsel had made a particular argument about the machinegun

14

evidence, but trial counsel's failure to do so did not render his performance "objectively unreasonable." *Id.*

What is more, trial counsel's failure to raise this argument did not prejudice the petitioner. The court of appeals determined that "a reasonable jury could find that Antoine Mayes possessed a machinegun in furtherance of the racketeering enterprise." *Mayes*, 650 F. App'x at 789. Accordingly, there was no basis for a directed verdict of acquittal on this charge.

5. *The petitioner was not prejudiced by trial counsel's failure to call a firearms-and-ballistics expert.*

The petitioner's final ineffective-assistance argument is that trial counsel "agreed to obtain a firearms expert" but later, "without first discussing/consulting with" the petitioner, "decided not to call [the] firearms expert . . . to the stand." Pet'r Br. 9–10.[12] The petitioner asserts that such an expert would have testified that the guns that Johnson and Hall described in their testimony "must necessarily satisfy the characteristics and statutory definition of a machinegun" in order to support the machinegun charge. Mot. 8. And he argues that the expert "would have disclosed that there is no documentary evidence . . . establishing that the firearms [that the petitioner allegedly possessed] were fully automatic." *Id.*

The Supreme Court has recently reaffirmed that trial decisions regarding "the objections to make, the witnesses to call, and the arguments to advance" "do not require client consent." *McCoy v. Louisiana*, 138 S. Ct. 1500, 1509 (2018) (quoting *Gonzalez v. United States*, 553 U.S. 242, 249 (2008)). It is true that "[i]mportant strategic and tactical decisions should be made only after a lawyer consults with his client." *Virgin Islands v. Weatherwax*, 77

---

[12] He also asserts that trial counsel was ineffective for failing to request funding from the court to retain such an expert. Mot. 8.

15

F.3d 1425, 1436 (3d Cir. 1996). But even where no consultation occurs, the petitioner "has the burden of proving that the alleged lack of communication with counsel prejudiced his defense." *Rosario v. Bennett*, No. 01 Civ. 7142(RMB)(AJP), 2002 WL 31852827, at *30 (S.D.N.Y. Dec. 20, 2002).

The testimony that the petitioner asserts would have been provided by an expert witness would not have been proper expert testimony. *See* Fed. R. Evid. 702(a) (requiring that "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"). That the petitioner must have possessed a gun that met the statutory definition of a "machinegun" in order to be convicted of the machinegun charge requires no specialized knowledge to understand, and moreover the jury was so instructed. Testimony from an expert to this effect would have been cumulative and unnecessary. Similarly, any lack of gun evidence at trial would have been apparent to the jury and could have been highlighted by trial counsel without the need for any expert testimony.

Because the petitioner has not explained what helpful testimony an expert witness would have offered, I find that trial counsel's failure to call an expert witness did not constitute ineffective assistance.[13]

## C. The petitioner is not entitled to an evidentiary hearing.

In addition to his substantive legal claims, the petitioner argues that, "in the interest of justice, judicial economy and time, an evidentiary hearing should be conducted" on his ineffective-assistance claims. Pet'r Br. 12.

A court may order "a hearing on an ineffective assistance of counsel claim" where a petitioner makes "a 'plausible' claim of ineffective assistance of counsel." *Puglisi v. United*

---

[13] *A fortiori*, trial counsel's alleged failure to obtain funding for such an expert did not prejudice the petitioner.

*States*, 586 F.3d 209, 213 (2d Cir. 2009) (quoting *Armienti v. United States*, 234 F.3d 820, 823 (2d Cir. 2000)). "To obtain an evidentiary hearing," then, a petitioner "must establish that he has a 'plausible' claim and must set forth in an affidavit specific facts supported by competent evidence, raising detailed and controverted issues of fact which, if proved at a hearing, would entitle him to relief." *Boakye v. United States*, No. 09 Civ. 8217, 2010 WL 1645055, at *6 (S.D.N.Y. Apr. 22, 2010) (quoting *United States v. Tarricone*, 996 F.2d 1414, 1418 (2d Cir. 1993)). "Airy generalities, conclusory assertions and hearsay statements will not suffice because none of these would be admissible evidence at a hearing." *United States v. Aiello*, 814 F.2d 109, 113–14 (2d Cir. 1987). And "no hearing is required where (1) the allegations of the motion, accepted as true, would not entitle the petitioner to relief; or (2) the documentary record renders a testimonial hearing unnecessary." *Boakye*, 2010 WL 1645055, at *6. In particular, where, as here, "the judge who tried the underlying proceedings also presides over a § 2255 motion, a full-blown evidentiary hearing may not be necessary." *Raysor v. United States*, 647 F.3d 491, 494 (2d Cir. 2011). "It is within the district court's discretion to determine whether a hearing is warranted." *Pham v. United States*, 317 F.3d 178, 184 (2d Cir. 2003); *see also Jolaoso v. United States*, 142 F. Supp. 2d 306, 308 n.2 (E.D.N.Y. 2001) (finding no need to "invit[e] a response from counsel" except where "there is a real possibility that the claim may be upheld").

The petitioner is not entitled to a hearing. For the reasons already described (*see supra* Section B), even taking all the petitioner's factual, non-conclusory assertions as true, I find that the petitioner has not made out a plausible claim of ineffective assistance of counsel.

## CONCLUSION

For the foregoing reasons, the petition is denied in full. Because the petitioner has not made "a substantial showing of the denial of a constitutional right," 28 U.S.C.

§ 2253(c)(2), no certificate of appealability shall issue, although the petitioner may make such an application to the Second Circuit. The Clerk of Court is directed to enter judgment accordingly.

So ordered.

                                                              ____/s/_____
                                                              Allyne R. Ross
                                                              United States District Judge

Dated:        September 21, 2018
                Brooklyn, New York