UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| Antoine Mayes, | 12-CR-0385 |
| *Petitioner*, | 17-CV-6789 |
| – against – | |
| United States, | **Not for Publication** |
| *Respondent*. | **Opinion & Order** |

ROSS, United States District Judge:

Petitioner, Antoine Mayes, has moved for reconsideration of the denial of his previous motion for reconsideration of the denial of his motion for relief under 28 U.S.C. § 2255. Because his arguments are meritless, the motion is denied.

## BACKGROUND

In 2014, Mayes was convicted in my court of numerous crimes, including racketeering, unlawful use of a machinegun in furtherance of racketeering, and attempted murder in aid of racketeering. *See Mayes v. United States* (*Mayes I*), No. 12-CR-0385, 2018 WL 4558419, at *1 (E.D.N.Y. Sept. 21, 2018). In November 2017, acting pro se, he petitioned this court under § 2255 to vacate some of the counts against him, arguing that his due-process rights were violated and that he received ineffective assistance of counsel. Pet., ECF No. 306. In a brief filed in February 2018, he clarified that his ineffective-assistance argument was "coupled with" allegations of prosecutorial misconduct. Pet. Reply 3, ECF No. 318. In a letter filed in April 2018, Mayes directed my attention to the Fourth Circuit's then-recent decision in *United States v. McCollum*, 885 F.3d 300 (4th Cir. 2018). *See McCollum* Letter, ECF No. 313. Finally, in a letter

1

filed in May 2018, he directed my attention to the Supreme Court's then-recent decision in *McCoy v. Louisiana*, 138 S. Ct. 1500 (2018). *See McCoy* Letter, ECF No. 314.

I denied his petition on September 21, 2018. *Mayes I*, 2018 WL 4558419. Mayes then timely filed a motion to reconsider that decision, under Rules 52(b) and 59(e) of the Federal Rules of Civil Procedure. *See* First Reconsideration Mot., ECF No. 317. On March 25, 2019, after reviewing the "exhaustive[] brief[ing]," I denied that motion as well. *Mayes v. United States* (*Mayes II*), No. 12-CR-0385, 2019 WL 1332885, at *1 (E.D.N.Y. Mar. 25, 2019). Mayes has now filed a second motion under Rules 52(b) and 59(e), asking me to reconsider my denial of his previous motion for reconsideration. Second Reconsideration Mot., ECF No. 328. In addition, Mayes's brother and codefendant, Anthony Mayes Jr., has submitted a declaration in support of petitioner's motion (Anthony Mayes Decl., ECF No. 329), and, attached to his reply brief, petitioner has filed a declaration of his own, corroborating statements made in his brother's declaration (Antoine Mayes Decl., ECF No. 332-1).[1]

## DISCUSSION

A. **Prosecutorial Misconduct**

Petitioner first argues that I "overlooked and therefore never considered the factual allegations of prosecutorial misconduct contained in . . . his § 2255 motion." Pet'r Br. 5, ECF No. 328. That is false. Although in my September 2018 opinion and order I observed that "any implied prosecutorial-misconduct claims are procedurally barred" (*Mayes I*, 2018 WL 4558419, at *7 n.9), I ultimately did consider, and reject, Mayes's prosecutorial-misconduct

---

[1] Subsequent to these filings, petitioner filed a notice of appeal as to my two previous rulings. Notice of Appeal, ECF No. 331. Because the notice of appeal was filed *after* the instant motion for reconsideration, it did not divest me of jurisdiction when filed but instead takes effect only now. *See, e.g.*, *Basciano v. Lindsay*, No. 07-CV-421 (NGG)(RML), 2008 WL 1700442, at *1 (E.D.N.Y. Apr. 9, 2008), *aff'd sub nom. Basciano v. Martinez*, 316 F. App'x 50 (2d Cir. 2009).

allegations as unsupported by the record in my March 2019 opinion and order (*see Mayes II*, 2019 WL 1332885, at *3).[2]

Mayes next argues that I overlooked evidence of prosecutorial misconduct, in the form of the sworn factual allegations that he offered in his brief supporting his previous motion for reconsideration. *See* Pet'r Br. 9. And he adduces additional evidence in the form of his and his brother's newly created declarations. *See id.*; *see also* Pet'r Reply Br. 9–10, ECF No. 332.[3]

First, I did not overlook any of the allegations in petitioner's sworn submission. His brief did include unsupported assertions about the government's knowledge (*e.g.*, Sworn Br. 10, ECF No. 317-1 ("[T]he Govt knew in advance of trial that its two pivotal witnesses . . . were 'NOT' going to tell the truth, yet, the Govt placed them both on the stand and allowed them to testify falsely.")), but a sworn declaration that the contents of the brief are true cannot convert petitioner's speculation into fact. As I explained when denying his previous motion, there was no evidence, including in his sworn submission, of the factual predicate underlying his claim—*i.e.*, "that the incident [witness Don] Johnson related in his testimony concerning

---

[2] Mayes also argues that the prosecutorial-misconduct claims were not procedurally barred. Pet'r Br. 6. Although the point is moot because I have rejected the prosecutorial-misconduct claims on the merits (*see Mayes II*, 2019 WL 1332885, at *3), I observe that Mayes seems to misunderstand why I said that the claims were barred. Mayes appears to believe that I initially rejected his prosecutorial-misconduct claims because he did not present them clearly in his initial petition and clarified his intention to allege prosecutorial misconduct only in his reply brief. *See* Pet'r Br. 7 ("Because petitioner's § 2255 motion and Traverse were simultaneously before this Court, this Court should have treated his Traverse as a request for leave to amend the § 2255 motion."). In fact, however, Mayes's prosecutorial-misconduct argument was waived *not* for that reason but because he failed to raise the argument in the direct appeal of his conviction. *See Mayes I*, 2018 WL 4558419, at *3 ("Generally speaking, . . . 'claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice.'" (quoting *Massaro v. United States*, 538 U.S. 500, 504 (2003))); *id.* at *7 n.9 ("[T]o bring [prosecutorial-misconduct] claims now, the petitioner would need to 'establish "cause and prejudice" . . . .'" (quoting *Garafola v. United States*, 909 F. Supp. 2d 313, 328 (S.D.N.Y. 2012))).

[3] The government suggests that Anthony Mayes's declaration cannot be properly considered at this late stage. *See* Gov't Opp'n 4 n.1, ECF No. 330. And because petitioner submitted his own declaration as an attachment to his reply brief, the government did not have an opportunity to respond to it. As it makes no difference to the ultimate result here, I assume without deciding that I may consider the declarations.

petitioner firing a machinegun *is* the 2005 incident described in the firearm report as involving a semiautomatic weapon." *Mayes II*, 2019 WL 1332885, at *3.[4]

Petitioner has finally provided that evidence, in a declaration by his brother, Anthony. Anthony Mayes now swears that Johnson was in fact "talking about the July 20, 2005 incident." Anthony Mayes Decl. ¶ 4. And Anthony swears that he "told [Johnson] that [petitioner] shot the block up with an Uzi and not a Tec." *Id.*

Although this is evidence that Johnson's testimony was false, it—crucially—is *not* evidence that the government *knew* that Johnson's testimony was false. *Cf. Mayes I*, 2018 WL 4558419, at *7 n.9 (observing that petitioner had "not explain[ed] how the government 'knew'" that Johnson's testimony was false). Without some evidence that the government knowingly elicited false testimony, petitioner's claim of prosecutorial-misconduct fails.[5]

B.  **Ineffective Assistance of Counsel**

Petitioner also argues that his and his brother's declarations are evidence that he received ineffective assistance of counsel at trial. *See* Pet'r Br. 12–13; *see also* Pet'r Reply Br. 9–10. In addition to what was noted above, the declarations state that, before his trial counsel's cross-examination of Johnson, petitioner "explain[ed] to [trial counsel] that Johnson's testimony described the July 20, 2005 incident with the exception of replacing the Uzi with a Tec." Anthony Mayes Decl. ¶ 6; *accord* Antoine Mayes Decl. ¶ 4. And the declarations state that trial counsel "said he would address this on his cross." Anthony Mayes Decl. ¶ 7; *accord* Antoine Mayes Decl. ¶ 5. In the end, however, trial counsel did not address the issue.

---

[4] I presume the reader's familiarity with the history of the dispute over this testimony, which is set forth in my previous opinions (*see Mayes II*, 2019 WL 1332885, at *2–3; *Mayes I*, 2018 WL 4558419, at *2, *7).

[5] Mayes notes that "[t]he Govt does *not deny* that it was aware of Johnson's lie about the 'Tec' or knowingly elicited Johnson's false testimony." Pet'r Reply Br. 6. The burden of proof, however, is on petitioner, not on the government.

Accepting the statements in the declarations as true, I still have no reason to alter my original determination that petitioner did not receive ineffective assistance of counsel. As I explained in my September 2018 opinion and order:

> [T]he petitioner . . . presents no basis for believing that cross-examination would have been fruitful. Johnson had no first-hand knowledge of the gun; he testified that he was "told" by Mayes Jr. that the petitioner had "shot a block up with a Tec." The petitioner would have had trial counsel ask Johnson whether "the particular 'Tec' that coconspirator Anthony Mayes described" was "a 'fully auto gun,'" but the petitioner offers no evidence that Johnson wouldn't have affirmed that it was, or that he had been told that it was.

*Mayes I*, 2018 WL 4558419, at *7 (citations omitted). That remains true today. Once trial counsel was informed that Johnson's testimony was false, he still had no avenue to impeach Johnson. There was no documentary evidence disproving Johnson's testimony, and neither Antoine nor Anthony Mayes could have contradicted Johnson's testimony, as both of them elected not to testify at trial. "Although it may have been preferable for [trial] counsel to pursue this line of questioning, the failure to do so does not rise to the level of deficient representation." *Id.* (quoting *Eze v. Senkowski*, 321 F.3d 110, 127 (2d Cir. 2003)).[6]

## C. *McCollum v. United States*

Petitioner next suggests that I failed to consider the Fourth Circuit's decision in *McCollum*. *See* Pet'r Br. 14–17. Petitioner is incorrect. Although I did not cite *McCollum* in my previous opinions in this case, that was not for failure to review it. Rather, I did not cite it because it was inapposite.

When my previous opinions issued, the controlling precedent with respect to petitioner's due-process claims was *United States v. Barrett*, 903 F.3d 166 (2d Cir. 2018), *vacated*, No. 18-6985, 2019 WL 2649797 (U.S. June 28, 2019), which, as I noted in my September 2018

---

[6] Additionally, I note that this testimony was not the only possible basis for petitioner's conviction. *See Mayes II*, 2019 WL 1332885, at *2 ("Johnson also testified that over the course of their lengthy association as part of the enterprise, petitioner had directed Johnson to 'commit . . . shootings' with 'machine guns.'").

5

opinion and order, was "directly on point" in this case. *Mayes I*, 2018 WL 4558419, at *4. Pursuant to *Barrett*, I ruled that petitioner's convictions for attempted murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5), were "crime[s] of violence under [18 U.S.C. § 924(c)(3)(B)]" based on the specific facts adduced at trial. *Id.* at *4–5 (quoting *Barrett*, 903 F.3d at 184).

In *McCollum*, the Fourth Circuit ruled that, under the categorical approach, conspiracy to commit murder in aid of racketeering, in violation of § 1959(a)(5), does not constitute a crime of violence under section 4B1.2(a) of the United States Sentencing Guidelines. *See* 885 F.3d at 307. *McCollum* was thus not on point in this case, for several reasons. Preliminarily, as a decision of the Fourth Circuit, it of course constituted merely persuasive authority. More to the point, although section 4B1.2(a) of the Sentencing Guidelines mirrors the language of § 924(c)(3)*(A)*, I found that petitioner's convictions were crimes of violence under § 924(c)(3)*(B)*; I explicitly made no finding with respect to § 924(c)(3)(A) (*see Mayes I*, 2018 WL 4558419, at *5 & n.8). Finally, and relatedly, the holding of *McCollum* was expressly the result of the Fourth Circuit's application of the categorical approach. *See McCollum*, 885 F.3d at 305–07. But *Barrett* had held that—in *this* circuit—"the identification of a crime of violence under § 924(c)(3)(B) is properly made . . . on a conduct-specific basis." 903 F.3d at 183. In light of *Barrett*, then, *McCollum* was simply irrelevant to my decision.

Now, however, the Supreme Court has vacated the *Barrett* decision (*see* 2019 WL 2649797, at *1), rejected the logic of its holding (*see United States v. Davis*, No. 18-431, 2019 WL 2570623, at *6 (U.S. June 24, 2019)), and struck down § 924(c)(3)(B) as unconstitutionally vague (*see id.* at *13). My previous decision upholding petitioner's conviction under § 924(c)(3)(B) (*see Mayes I*, 2018 WL 4558419, at *5) can therefore no longer stand.

6

Nevertheless, for the reasons already set forth in that decision (*see id.* at *4), petitioner's due-process challenge to his conviction is procedurally barred.

"In general, a defendant is barred from collaterally challenging a conviction under § 2255 on a ground that he failed to raise on direct appeal." *United States v. Thorn*, 659 F.3d 227, 231 (2d Cir. 2011). There are exceptions to that rule, but they require a showing of either "(1) cause for the procedural default and ensuing prejudice or (2) actual innocence." *Id.*; *see also supra* note 2. Petitioner has not attempted to argue actual innocence, and the only cause that he has put forward is that *United States v. Johnson*, 135 S. Ct. 2552 (2015), the basis for his argument, was decided after his trial (*see* Pet. 5). But as I previously noted, the *Johnson* decision was released several months *before* petitioner's direct appeal was filed, so that is no excuse at all. *See Mayes I*, 2018 WL 4558419, at *4.

Instead, petitioner argues that a showing of cause and prejudice is not required in the face of "a 'significant denial of a constitutional right' or 'an error of significant constitutional dimension.'" Sworn Br. 7 (quoting *Grimes v. United States*, 607 F.2d 6, 10 (2d Cir. 1979)).[7] But this too fails. The language that petitioner quotes from *Grimes* is simply no longer the operative standard. *See Campino v. United States*, 968 F.2d 187, 190 (2d Cir. 1992) (holding that "failure to raise a constitutional issue on appeal is itself a procedural default, thereby implicating the cause and prejudice test").

D.  ***McCoy v. Louisiana***

Petitioner also argues that I "completely missed [his] argument" with respect to *McCoy*—namely, that "Petitioner wanted to put on a defense and trial counsel ignored his right

---

[7] Petitioner made this argument in connection with his previous motion for reconsideration, but I had no reason to address it then, because I was rejecting petitioner's claim on the merits, in reliance on *Barrett*. *See Mayes II*, 2019 WL 1332885, at *3. Now that *Barrett* has been vacated and I must rely on the procedural bar, petitioner's argument deserves a response.

7

and instead decided not to put on a defense at all." Pet'r Br. 18. Although I have attempted to afford petitioner's arguments a "liberal reading" (*Dotson v. Griesa*, 398 F.2d 156, 159 (2d Cir. 2005)), I cannot locate in his papers a meritorious claim that his constitutional rights were violated.

In his original petition, Mayes "argued that '[t]rial counsel was constitutionally ineffective for . . . failing to call a firearms and ballistics analysis expert for the defense.'" *Mayes II*, 2019 WL 1332885, at *4. While the petition was still pending, Mayes submitted a letter to the court directing my attention to *McCoy*. He wrote, "*McCoy* supports my [petition] in that my only defense was calling the ballistic[s] expert/firearm[s] expert. I had the right to present my defense to a jury. Maintaining my innocence to the machinegun charge belongs to me." *McCoy* Letter 2. In my opinion and order denying the petition, I observed that "trial decisions regarding . . . 'the witnesses to call' . . . 'do not require client consent,'" and I thus concluded that trial counsel's failure to call the proposed expert witness did not violate petitioner's rights. *Mayes I*, 2018 WL 4558419, at *9 (quoting *McCoy*, 137 S. Ct. at 1509).

Mayes now states that his "claim is '*not*' premised on haggling over what witnesses to place or not place on the stand" but instead that it "is about an agreement that was struck between counsel and petitioner outside the trial '*prior*' to trial. An agreement that directed counsel to adhere to petitioner's right to put on a defense." Pet'r Reply Br. 15. Mayes does not elaborate on the content of this agreement, however.

Mayes goes on to assert that "[c]ounsel usurped petitioner's right and at trial provided '*no*' defense whatsoever. Petitioner was provided '*no*' defense at all." *Id.* at 15–16. If, as Mayes says, "[t]his claim is just that simple" (*id.* at 16), it fails. Mayes was competently represented at trial (*see, e.g.*, Trial Tr. 3033–64, ECF No. 279 (closing argument)), and trial counsel neither "overrule[d] petitioner's decision whether to testify in his own defense" (*Mayes II*, 2019 WL

1332885, at *4) nor "concede[d] [petitioner's] guilt" (*McCoy*, 138 S. Ct. at 1507). In short, petitioner has not pointed to anything that trial counsel did, or failed to do, that violated his constitutional rights.

E.  **Evidentiary Hearing**

Finally, petitioner argues that the submission of his brother's declaration "makes his habeas claims plausible," thus entitling him to an evidentiary hearing. Pet'r Br. 20. For the reasons described above (*see supra* Sections A–B), I still do not find that petitioner has "made out a plausible claim" (*Mayes I*, 2018 WL 4558419, at *10), and thus he is still not entitled to a hearing.

## CONCLUSION

For the foregoing reasons, petitioner's motion is denied.

So ordered.

____/s/_____
Allyne R. Ross
United States District Judge

Dated: July 8, 2019
Brooklyn, New York