

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ OCT 17 2022 ★

BROOKLYN OFFICE



RECEIVED
OCT 17 2022
PRO SE OFFICE

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,
                    Plaintiff,

v.                                   Case No. 1:12-cr-385-2

ANTOINE MAYES,
                    Defendant.

_____/

Assigned to: Allyne Ross, U.S. District Judge

## MOTION FOR RECONSIDERATION OF MEMORANDUM AND ORDER DENYING PETITIONER'S MOTION FOR COMPASSIONATE RELEASE

NOW COMES, the Defendant Antoine Mayes (hereinafter, "Mayes"), proceeding in this matter pro-se, and respectfully requesting this Honorable Court to reconsider its Memorandum & Order denying Mayes' motions for compassionate release. In support of this request, Mayes states the following:

**Relevant Facts and Background:**

For more detailed facts and background see the Court's prior opinions and orders at United States v. Mayes, No. 12-CR-385 (ARR), 2014 WL 3530862, at *1 (E.D.N.Y. July 10, 2014) (denying motions under Federal Rules of Criminal Procedure 29 and 33), aff'd, 650 F. App'x 787 (2d Cir. 2016) (summary order); Mayes v. United States ("Mayes I"), No. 12-CR-385 (ARR), 2018 WL 4558419 (E.D.N.Y. Sept. 21, 2018) (denying first motion to vacate under 28 U.S.C. § 2255); see also Mayes v. United States ("Mayes II"), No. 12-CR-385 (ARR), 2019 WL 1332885, at *1 (E.D.N.Y. Mar. 25, 2019) (denying first motion for reconsideration); Mayes v. United States ("Mayes III"), No. 12-CR-385 (ARR), 2019 WL 2912758, at *1 (E.D.N.Y. July 8, 2019) (denying second motion for reconsideration); Mayes v. United States ("Mayes IV"), No. 12-CR-385 (ARR),

2019 WL 6307411, at *2 (E.D.N.Y. Nov. 25, 2019) (denying third motion for reconsideration).

Mayes' second § 2255 motion seeks relief on three principal grounds that overlap in large part with the arguments raised in petitioner's first § 2255 motion. First, petitioner argues that "[b]ecause Count [Two] of the indictment charged one or more Section 924(c) offenses based on multiple predicate offenses, some of which do not constitute crimes of violence[,] and because the general-jury-verdict form did not specify as to what racketeering acts the firearm conviction[] applied, . . . the firearm conviction[] must be vacated." Mot. File Successive Pet. 8–17, 25–27. Second, Mayes argues that "th[is] firearm conviction [] must also be vacated" because it "may rest on uncharged acts of racketeering." Id. at 17–21. Third, Mayes argues that because attempted murder can no longer serve as a predicate crime for a § 924(c) firearm conviction, his convictions on Counts Six, Eight, and Ten must be vacated. Id. at 23–25. In asserting these new claims, Mayes relies primarily on the Supreme Court's recent decision in Davis and the Second Circuit's subsequent decision in United States v. Barrett ("Barrett II"), 937 F.3d 126 (2d Cir. 2019), which abrogated the circuit's pre-Davis decision in United States v. Barrett ("Barrett I"), 903 F.3d 166 (2d Cir. 2018). See Pet'r's Reply 7–8; 2d Cir. Order 2 n.*. Mayes seeks vacatur of his firearms convictions and resentencing. Mot. File Successive Pet. 19, 21, 24; Am. Second Mot. Vacate 5, 10, 13.

On May 13, 2014, Mayes was convicted by a jury of the following eleven counts contained in the fourth superseding indictment:

Count One: Racketeering, 18 U.S.C. §§ 1961(1), (5), 1962(c);

Count Two: Unlawful Use and Possession of Firearms, 18 U.S.C. § 924(c);

Count Four: Conspiracy to Commit Murder in Aid of Racketeering, 18 U.S.C. § 1959(a);

Count Five: Attempted Murder in Aid of Racketeering, 18 U.S.C. § 1959(a);

Count Six: Unlawful Use and Discharge of a Firearm, 18 U.S.C. § 924(c);

Count Seven: Attempted Murder in Aid of Racketeering, 18 U.S.C. § 1959(a);

Count Eight: Unlawful Use and Discharge of a Firearm, 18 U.S.C. § 924(c);

Count Nine: Attempted Murder in Aid of Racketeering, 18 U.S.C. § 1959(a);

Count Ten: Unlawful Use and Discharge of a Firearm, 18 U.S.C. § 924(c);

Count Eleven: Attempted Possession of Cocaine with Intent to Distribute, 18 U.S.C. §§ 841(b), 846; and

Count Twelve: Possession of Cocaine Base with Intent to Distribute, 21 U.S.C. § 841(a)–(b).

On January 8, 2015, Mayes was sentenced to a total term of 110 years' imprisonment, consisting of concurrent sentences of 5 years' imprisonment on each of Counts One, Six, Seven, Nine, Eleven, Thirteen, and Fourteen, as well as consecutive sentences of 30 years' imprisonment on Count Two, 25 years' imprisonment on Count Eight, 25 years' imprisonment on Count Ten, and 25 years' imprisonment on Count Twelve. Crim J. 3–4. On January 15, 2015, Mayes appealed the judgment against him, Notice of Appeal, ECF No. 258, and on November 6, 2015, he submitted his opening brief to the Second Circuit, Br. & App., United States v. Mayes, No. 13- 2331 (2d Cir. Nov. 6, 2015), ECF No. 122. On May 31, 2016, the circuit affirmed the judgment. United States v. Mayes, 650 F. App'x 787 (2d Cir. 2016) (summary order).

On November 16, 2017, Mayes filed a motion under 28 U.S.C. § 2255 seeking "to set aside [his] four-gun convictions, which compose the vast majority of his sentence, on the grounds of ineffective assistance of counsel and lack of due process." Mayes I, 2018 WL 4558419, at *1; see First Mot. Vacate, ECF No. 306. The Court ultimately denied that motion, as well as Mayes' three subsequent motions to reconsider the denial, on both procedural grounds and the merits. See Mayes I, 2018 WL 4558419; Mayes II, 2019 WL 1332885; Mayes III, 2019 WL 2912758; Mayes IV, 2019 WL 6307411. Mayes appealed the denial, Notice of Appeal, ECF No. 331, and on May 28, 2020, the circuit dismissed his appeal, Mot. Order, Mayes v. United States, No. 19-1556 (2d Cir. May 28, 2020), ECF No. 89.

On June 22, 2020, Mayes filed a second § 2255 motion. Second Mot. Vacate, ECF No. 356; see also Am. Second Mot. Vacate, ECF No. 357. The Court determined that this new motion was an unauthorized successive motion under § 2255(h), and denied it on that basis. See Text Order (June 26, 2020). Consequently, Mayes sought authorization from the Second Circuit to file a successive § 2255 motion. Not. Appeal, ECF No. 358; see Mot. File Successive Pet., Mayes v. United States, No. 20-3123 (2d Cir. Sept. 11, 2020), ECF No. 2.

The circuit concluded that because Mayes' second § 2255 motion was filed prior to final adjudication of his first § 2255 motion, it would not in fact be a successive motion. 2d Cir. Order 1–2, ECF No. 374 (noting that adjudication of the first motion became final only when "Mayes' time to petition the Supreme Court for writ of certiorari expired in August 2020"). The circuit then transferred the matter back to this court "for whatever further action the district court finds appropriate, as if it had been filed directly in the district court." Id. at 2 (citation omitted). The circuit also specifically instructed me to "determine in the first instance what effect, if any, [the Court's] prior decision," denying Mayes' first § 2255 motion, "has on Mayes' present claims." Id. at 2 n.*.

In accordance with the circuit's directive, The Court ordered the government to file a response to Mayes' second § 2255 motion. Text Order (Feb. 12, 2021). On March 15, 2021, the government filed its opposition, Gov't's Opp'n, ECF No. 378, and on April 6, 2021, Mayes filed a reply, Pet'r's Reply, ECF No. 385.

 Mayes' second § 2255 motion seeks relief on three principal grounds that overlap in large part with the arguments raised in Mayes's first § 2255 motion. First, Mayes argues that "[b]ecause Count [Two] of the indictment charged one or more Section 924(c) offenses based on multiple predicate offenses, some of which do not constitute crimes of violence[,] and because the general-jury-verdict form did not specify as to what racketeering acts the firearm conviction[] applied, . . . the firearm conviction[] must be vacated." Mot. File Successive Pet. 8–17, 25–27. Second, Mayes argued that "th[is] firearm conviction [] must also be vacated" because it "may rest on uncharged acts of racketeering." Id. at 17–21. Third, Mayes argued that because attempted murder can no longer serve as a predicate crime for a § 924(c) firearm conviction, his convictions on Counts Six, Eight, and Ten must be vacated. Id. at 23–25. In asserting these new claims, Mayes relies primarily on the Supreme Court's recent decision in Davis and the Second Circuit's subsequent decision in United States v. Barrett ("Barrett II"), 937 F.3d 126 (2d Cir. 2019), which abrogated the circuit's pre-Davis decision in United States v. Barrett ("Barrett I"), 903 F.3d 166 (2d Cir. 2018). See Pet'r's Reply 7–8; 2d Cir. Order 2 n.*.

In the instant Motion Mayes seeks vacatur of his firearms convictions and resentencing. And/or, a reduction in his sentence under the First Step Act of 2018 ("Compassionate Release").

### (i)    United States v. Taylor, No. 20-1459

The Supreme Court, recently, handed down an order in United States v. Taylor, No. 20-1459, which concerns the definition of a "crime of violence" for application of a 924(c)-sentencing enhancement, was argued more than sixth months ago during the Court's December sitting. The question before the court in United States v. Taylor is whether an attempted (but ultimately unsuccessful) robbery under the Hobbs Act, which criminalizes an attempt to commit robbery that affects interstate commerce, qualifies as a "crime of violence" for purposes of a federal law that makes it a federal crime to use a gun in a "crime of violence." The Supreme Court held, That Attempted Hobbs Act robbery does not qualify as a "crime of violence" under §924(c)(3)(A) because no element of the offense requires proof that the defendant used, attempted to use, or threatened to use force.

The Court applies a "categorical approach" to determine whether a federal felony may serve as a predicate for a conviction and sentence under the element's clause, which poses the question whether the federal felony in question "has as an element the use, attempted use, or threatened use of physical force." §924(c)(3)(A) (emphasis added). The relevant inquiry is not how any particular defendant may commit the crime but whether the federal felony at issue always requires the government to prove—beyond a reasonable doubt, as an element of its case—the use, attempted use, or threatened use of force.

### (ii)    THE AFFECT OF THE FIRST STEP ACT:

The Supreme Court has since (the denial of Mayes motion(s)), issued its decision. Concepcion v. United States, ___ S Ct. ___, 2022 WL 2295029 (June 27, 2022). The question before the Supreme Court was whether a district court must consider intervening changes of law (such as changes to the Sentencing Guidelines) or changes in fact (such as behavior in prison) in adjudicating a First Step Act motion. Concepcion, 2022 WL 2295029, at *4. The Court held that if a defendant is eligible for a reduced sentence under Section 404(a), the district court must consider (i.e., acknowledge) intervening changes of law and fact brought to its attention by the defendant in deciding whether to grant a reduction. See id. at *4, *12. In other words, just as this Court must do in a post-Booker initial sentencing proceeding, it must acknowledge nonfrivolous mitigation arguments raised by the defendant. The District Courts must consider intervening changes of law and fact when parties raise them.

In drafting this piece of legislation Congress recognized the long ongoing battle for prison reform due to the harshness of the federal sentences. Congress sought to allow the district courts to revisit sentences on a case by case basis and determine whether new facts and new laws, post facto, created "extraordinary and compelling" reasons to reduce a sentence, particularly in light of the insufferable restrictions of 28 U.S.C. Section 2244 (i.e. AEDPA). To cure this long lingering illness Congress carved out a form of "safety valve" for modifying sentences that was previously available via federal parole, which had been abolished.

Defendants that could not previously apply for relief based on changes in law such as Apprendi and Alleyne, which constituted a fundamental deprivation of a constitutional right, due, primarily, to the AEDPA, can now seek justice from the district courts.

The sum of these parts is that the Supreme Court's ruling in Concepcion v. United States the district Courts now return to its pre-Comprehensive Crime Control Act status of again being empowered to modify sentences where it determines that "extraordinary and compelling" reasons exists. And, Concepcion makes clear that it is for the district court to determine on a case by case basis what it deems extraordinary and compelling reviewing any and all new facts and changes in law that have occurred since the initial sentencing and applying the Section 3553(a) factors to the new set of facts and circumstances.

The standard for adjudicating a motion under 18 U.S.C. Section 3582(c)(1)(A) is for the district court to "consider intervening changes in law or fact and use its [unfettered] discretion" to determine whether a sentence can be modified, Concepcion v. United States, supra.

**(iii)  DISCUSSION:**

When the dust settles, and the Court wades through the facts and legal propositions that have changed since the initial sentencing, the question will be whether these changes in law and fact constitute "extraordinary and compelling circumstances" sufficient to justify a modification of the sentence. See also, Concepcion v. United States, No. 20-1650, Slip Op. at 18 (U.S. June 27, 2022) ("[T]he First Step Act [does not] require a district court to make a point-by-point rebuttal of the parties' arguments. All that is required is for a district court to demonstrate that it has considered the arguments before it."). Thus, this Honorable Court should consider all facts and legal propositions that have changed since the initial sentencing. United States v. Thatch, No. 20-6364 (4th Cir. Jun. 30, 2022).

The court must balance Petitioner's rehabilitation efforts with his extremely serious criminal conduct, the need to punish him, the need to promote respect for the law, the need to protect society, and the need to deter others. Cf. Concepcion v. United States, No. 20-1650, 2022 WL 2295029, at *12 (U.S. June 27, 2022); Pepper, 562 U.S. at 480-81. The court also has considered Petitioner's potential exposure to COVID-19, his natural antibodies, his vaccine, his medical conditions, his age, and his release plan. United States v. Taylor, 4:14-CR-13-D (E.D.N.C. Jun. 27, 2022); and United States v. Ward, 5:11-CR-286-D (E.D.N.C. Jun. 28, 2022).

## THE ARGUMENT

In Davis, the Supreme Court struck down as unconstitutionally vague § 924(c)(3)(B), commonly known as the "residual clause." 139 S. Ct. at 2323–24. Davis itself followed the Supreme Court's earlier decisions in Johnson v. United States and Sessions v. Dimaya, which had struck down similar residual clauses in other statutes. 576 U.S. 591 (2015) (striking down residual clause in 18 U.S.C. § 924(e)(2)(B)(ii)); 138 S. Ct. 1204 (2018) (striking down residual clause in 18 U.S.C. § 16(b)).

Thus, a conviction under § 924(c) can now only be sustained if the predicate offense qualifies as either a "drug trafficking crime" or a "crime of violence," as defined in § 924(c)(3)(A), commonly known as the "elements clause" or the "force clause." See United States v. Heyward, No. 19-1054, 2021 WL 2638609, at *4 (2d Cir. June 28, 2021); United States v. Culbert, 453 F. Supp. 3d 595, 597 (E.D.N.Y. 2020) ("Any valid application of § 924(c) . . . must proceed from an underlying conviction qualifying under the elements clause."). To determine whether a predicate offense qualifies as a crime of violence under the elements clause, the Court must employ what is called the categorical approach, under which the court "identify the minimum criminal conduct necessary for conviction under a particular statute," "look[ing] only to the statutory definitions—i.e., the elements—of the offense, and not to the particular underlying facts." United States v. Thrower, 914 F.3d 770, 774 (2d Cir. 2019) (citation and quotation marks omitted); see also, e.g., Heyward, 2021 WL 2638609, at *4; Barrett II, 937 F.3d at 128. "A state criminal offense may serve as a predicate crime of violence only if it categorically requires proof of the elements listed in the elements clause." Rudaj v. United States, No. 04-CR-1110 (DLC), 2021 WL 1172333, at *5 (S.D.N.Y. Mar. 29, 2021).

As a further consequence of Davis, the Supreme Court vacated the Second Circuit's judgment in Barrett I, see Barrett v. United States, 139 S. Ct. 2774, (2019), upon which my initial denial of petitioner's first § 2255 motion partially relied. See Mayes I, 2018 WL 4558419, at *4 (explaining that Barrett I had "distinguished" § 924(c)(3)(B) from "the statutes at issue in Johnson and Dimaya"). On remand, the Second Circuit decided Barrett II, which held that, after Davis, a conspiracy to commit a violent felony was not categorically a crime of violence and could no longer support a conviction under § 924(c)'s remaining elements clause. 937 F.3d at 127, 129; see also Heyward, 2021 WL 2638609, at *4.

Therefore, Mayes asks the Court to "grant a resentencing without the enhancements for 18 U.S.C. § 924(c) and resentence without the attempted murder racketeering acts."

Finally, as stated above if the Supreme Court in United States v. Taylor, No. 20-1459, which concerns the definition of a "crime of violence" for application of a 924(c)-sentencing enhancement. The question before the court was whether an attempted (but ultimately unsuccessful) robbery under the Hobbs Act, which criminalizes an attempt to commit robbery that affects interstate commerce, qualifies as a "crime of violence" for purposes of a federal law that makes it a federal crime to use a gun in a "crime of violence." The Supreme Court held, That Attempted Hobbs Act robbery does not qualify as a "crime of violence" under §924(c)(3)(A) because no element of the offense requires proof that the defendant used, attempted to use, or threatened to use force. Clearly supports that Mayes that "[b]ecause Count [Two] of the indictment charged one or more Section 924(c) offenses based on multiple predicate offenses, some of which do not constitute crimes of violence, and because the general-jury-verdict form did not specify as to what racketeering acts the firearm conviction applied, the firearm conviction must be vacated. Also, the firearm conviction must be vacated because it may rest on uncharged acts of racketeering. Finally, that because attempted murder can no longer serve as a predicate crime for a § 924(c) firearm conviction, his convictions on Counts Six, Eight, and Ten must be vacated.

## I.    NO REASON FOR CONTINUING TO WAREHOUSE MAYES
(Compassionate Release Request):

Because people grow, mature and evolve, and because conditions and circumstances change, it is virtually impossible to make sound decisions when first

imposing sentence about precisely how long someone should spend behind bars. But that is exactly how the federal criminal justice system works. Judges are required to act as if they are omniscient and the prison terms they impose are – for all intents and purposes – final. Congress did, when it abolished parole through passage of the Sentencing Reform Act of 1984, invest the U.S. Bureau of Prisons (the "BOP") with the discretion to revisit and review the sentences imposed on a few narrow categories of defendants. But the BOP largely has not exercised that authority, even for defendants who were sentenced decades ago, even for defendants serving exceedingly long prison terms or even for defendants for whom continued confinement can no longer readily be justified on moral or utilitarian grounds.

Responding to concerns that the BOP was not making adequate use of its legal authority to seek sentence reductions for qualified defendants, Congress recently vested federal judges with the power to do what they were previously prohibited from doing absent a motion from the Director of the BOP. Specifically, changes to 18 U.S.C. § 3582(c)(1)(A) contained in the First Step Act (which was signed into law on December 21, 2018) authorize courts to reduce the prison term – even to time served – of any defendant if it finds that "extraordinary and compelling reasons" warrant such a reduction. In other words, federal judges are now empowered to take a "second look" at the sentences imposed on defendants who are deserving and worthy of a "second look."

Mayes is deserving and worthy of just such a "second look." And, as set forth below, "extraordinary and compelling reasons" warrant a reduction of his 110-year sentence to time served (or less than 110-years). Accordingly, and for all the reasons detailed below, he respectfully requests that this Court enter an Order, pursuant to 18 U.S.C. § 3582(c)(1)(A), reducing his sentence to time served (or, alternatively, to a term of years short of 110-years that this Court finds is consistent with the dictates of 18 U.S.C. § 3553(a)).

Mayes does not dispute that his offense was decidedly serious. Although he did operate a large-scale Cocaine-base distribution organization. Almost 10 years later – Mayes is deserving of a "second look" and a reduced sentence. And, as detailed below, this Court is now authorized to take such a "second look" and empowered to reduce Mayes sentence (even to time served).

Congress made the foregoing changes in an effort to expand the use of 18 U.S.C. § 3582(c)(1)(A) in the reduction of sentences that no longer serve the penological

objectives of the federal criminal justice system. Thus, today, federal judges have the power to order sentence reductions and, in doing so, are authorized to reduce prison terms (even to time served) on the full array of grounds reasonably encompassed by the phrase "extraordinary and compelling reasons." Put differently, relief under 18 U.S.C. § 3582(c)(1)(A) is now available to any defendant whose conditions have changed such that a fair-minded person could conclude that "extraordinary and compelling" reasons for a sentence reduction exist. United States v. Cantu-Rivera, Case No. 89-CR-204, 2019 WL 2578272 (S.D. Tex. June 24, 2019) is instructive with regard to this Court's newfound authority to reduce sentences based on "extraordinary and compelling reasons" (even if those reasons do not relate to medical condition, age or family circumstances). Initially, the court in Cantu-Rivera explained that "[t]he First Step Act of 2018 amended 18 U.S.C. § 3582(c)(1)(A) to allow district courts to modify sentences of imprisonment upon motion by the defendant if the defendant has fully exhausted all [BOP] administrative rights . . . or 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." Id. at *1 (internal quotation marks omitted). It then reduced that defendant's life sentence (for conspiracy to possess with intent to distribute in excess of five kilograms of cocaine) to time served (after service of more than 30 years imprisonment) based principally on "the extraordinary degree of rehabilitation Mr. Cantu-Rivera has accomplished during the 30 years he has been incarcerated," including "extensive educational achievements," such as "completion of over 4,000 hours of teaching while in federal prison to complete a Teaching Aide apprenticeship with the Department of Labor," his "service as a teaching assistant in several prison facilities for high-school equivalency and English-as-a-Second-Language programs" and "his service in the BOP's suicide watch program, helping to care for inmates placed in solitary confinement due to suicide attempts." Id. at *2.

Similarly, in United States v. Cantu, Case No. 05-CR-458, 2019 WL 2498923 (S.D. Tex. June 17, 2019) the court properly noted that "[a] court may now," pursuant to 18 U.S.C. § 3582(c)(1)(A), "modify a defendant's sentence if it finds on either the BOP's or the defendant's motion that 'extraordinary and compelling reasons warrant such a reduction' and 'such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" Id. at *1. It then reduced that defendant's 290-month sentence (which had previously been reduced to 210 months based on Amendments 782 and 788 to the Guidelines) to time served (after service of more than 14 years imprisonment) based principally on his medical condition, even though he "ha[d] not presented evidence that his

reasons are extraordinary and compelling under the three explicitly defined reasons" set forth in Application Note 1 to Section 1B1.13 of the Guidelines. Id. At *3. And, in United States v. McGraw, Case No. 02-CR-00018, 2019 WL 2059488 (S.D. Ind. May 9, 2019) the court stated that the First Step Act's modification of 18 U.S.C. § 3582(c)(1)(A) "now provides an avenue for a defendant to seek a [sentence reduction directly] from the Court" and that "courts have universally turned to U.S.S.G. § 1B1.13 to provide guidance on the 'extraordinary and compelling reasons' that may warrant a sentence reduction." Id. at *1. It then reduced that defendant's life sentence (for possession with intent to distribute methamphetamine) to time served (after service of more than 17 years imprisonment) based principally on "his serious medical conditions," even though he had a long criminal history and had occupied a "leadership" position in the Diablos motorcycle gang. Id. at 2-6.

The instant case is similar to United States v. Reid, No. 05-CR-596 (ARR), 2021 WL 837321, at *5 (E.D.N.Y. Mar. 5, 2021) ("[P]urely legal injuries that could have been raised in habeas petitions or direct appeals" may nonetheless be relevant under § 3582(c)(1)(A) because "the First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an, imprisoned person might bring before them in motions for compassionate release.") See also, Reynolds v. United States, 99-CR-520 (NGG), at *5-6 (E.D.N.Y. May 6, 2022).

In sum, the majority of district courts to address this issue have found the authority to grant a reduction in sentence under the catchall provision, and indeed many have done so based on the same "extraordinary and compelling reasons" that the district court found present in United States v. McCoy, ___ F.3d ___, 2020 U.S. App. LEXIS 37661, at *6 (4th Cir. Dec. 2, 2020) (citing 18 U.S.C. § 3582(c)(1)(A) (2012)); United States v. Day, No. 1:05-cr 460-AJT, ECF No. 257 at 23–24 (E.D. Va. July 22, 2020) (holding that the "gross disparity" between the sentence the defendant received and the sentence he would receive under the law today qualified as an extraordinary and compelling reason for compassionate release); United States v. Adeyemi, No. CR 06-124, 2020 WL 3642478, at *15 (E.D. Pa. July 6, 2020)( finding that "[b]ecause the Sentencing Commission has not amended its policy statement or commentary after the passage of the First Step Act, and Note 1(D) contradicts the First Step Act's amendment to section 3582(c)(1)(A)(i), [district courts] may independently determine extraordinary and compelling reasons in line with the rest of the Commission's commentary not rendered contradictory to federal law."); United States v. Quinn, No. 3:91-CR-

00608, 2020 WL 3275736, at *4 (N.D. Cal. June 17, 2020) (joining "numerous other courts" and holding that the First Step Act empowered district courts to consider "enormous sentencing disparit[ies] created by subsequent changes to federal sentencing law" as an "extraordinary and compelling reason" for compassionate release); United States v. Lott, No. 95-CR-72, 2020 WL 3058093, at *2 (S.D. Cal. June 8, 2020) ("[T]he Court finds that [the sentencing guideline] provisions are not a limitation upon the Court's ability to determine whether a defendant has presented extraordinary and compelling reasons for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)"); United States v. Scott, No. 95-CR-202, 2020 WL 2467425, at *3 (D. Md. May 13, 2020) ("While Sentencing Commission and BOP criteria remain helpful guidance, the amended § 3582(c)(1)(A)(i) vests courts with independent discretion to determine whether there are "extraordinary and compelling reasons" to reduce a sentence."); United States v. Arey, No. 5:05-CR- 00029, 2020 WL 2464796, *4 (W.D. Va. May 13, 2020) (the First Step Act revised § 3582(c) to vest the court with "independent discretion" to find extraordinary and compelling circumstances that warrant a reduction of sentence); United States v. Marks, No. 03-CR-6033L, 2020 WL 1908911, at *17 (W.D.N.Y. Apr. 20, 2020); United States v. McPherson, No. 94-CR-570, 2020 WL 1862596, at *4 (W.D. Wash. Apr. 14, 2020); United States v. Wade, No. 2:99-CR-00257, 2020 WL 1864906, at *5 (C.D. Cal. Apr., 13, 2020) ("A growing number of district courts . . . have concluded that, in the absence of applicable policy statements, courts can determine any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 warrant sentence modification.") (citations omitted); United States v. Young, No. 2:00-CR-00002-1, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020) (determining that courts "have the authority to reduce a prisoner's sentence upon the court's independent finding of extraordinary and compelling reasons"); Maumau, 2020 WL 806121, at *4 (finding that "[u]nder the First Step Act, it is for the court, not the [BOP], to determine whether there is an 'extraordinary and compelling' reason to reduce a sentence"); Ebbers, 432 F. Supp. 3d at 433 n.6 ("[T]he First Step Act reduced the BOP's control over compassionate release and vested greater discretion with the courts. Deferring to the BOP would seem to frustrate that purpose"); United States v. Urkevich, No. 8:03-CR-37, 2019 WL 6037391, at *1 (D. Neb. Nov. 14, 2019) ("The First Step Act also amended 18 U.S.C. § 3582. In Section 603 of the Act, congress amended § 3582(c)(1)(A) to permit defendants to move a sentencing court for modification of sentence"); United States v. Cantu-Rivera, No. CR H-89-204, 2019 WL 2578272, at *2 n.1 (S.D. Tex. June 24, 2019)

(finding the court had the authority to determine that the defendant was entitled to relief under the catch-all provision in the commentary to § 1B1.13).

## CONCLUSION

For the reasons set forth above, this Court should grant the Motion.

Antoine Mayes, pro-se
Reg. No. 78351-053
USP-ALLENWOOD
P.O. BOX 3000
WHITE DEER, PA 17887

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on October 4th, 2021 the foregoing Reply Motion was served upon the U.S. Attorney for the Eastern District of New York via U.S. mail and pre-paid.

Antoine Mayes

# ATTACHMENT(S)

08/01/2022



**07/19/2022**

**The Chelsea House NYC**

**235 Ninth Ave**

**New York, Ny 10001**

RE: Verification of employment for Antione Mayes

        Please accept this letter as conformation that employee Antione Mayes will have a full-time position at The Chelsea house upon release. If any questions or require further information, please don't hesitate to contact me at 646-370-3315. Thank you

Kind Regards,

Quanaja Mcclain

General Manager

**235 Ninth Ave.**

**WWW.TheChelseaHouseNYC.com**

**info@chelseahousenyc.com Tel: 646-370-3315**

MAYES, Antoine
Register No.: 78351-053
Unit 3A
Page 1

---

### Inmate Request to Staff Response

This is in response to your Request to Staff, wherein you request a Compassionate Release/Reduction in Sentence (RIS) based upon "extraordinary and compelling circumstances." Specifically, you claim the COVID-19 pandemic, your good conduct while incarcerated, and the changes in federal law all warrant consideration.

The BOP is taking extraordinary measures to contain the spread of COVID-19 and treat any affected inmates. We recognize that you, like all of us, have legitimate concerns and fears about the spread and effects of the virus. However, your concern about being potentially exposed to, or possibly contracting, COVID-19 does not currently warrant an early release from your sentence.

While I appreciate and understand your claims of good conduct during your incarceration and the changes in law since your sentencing, your request does not meet the requirements as set forth in policy. In accordance with Program Statement 5050.50, Compassionate Release/Reduction in Sentence, you do not meet the requisite criteria under extraordinary or compelling circumstances. The Bureau of Prisons does not have the authority, through its compassionate release/reduction in sentence procedures, to reduce an inmate's term of imprisonment as a result of your ability to follow prison rules during incarceration and the changes in federal law since you were sentenced.

Accordingly, your request for Compassionate Release/Reduction in Sentence has been denied. If you are dissatisfied with this response, you may appeal this decision through the Administrative Remedy Process.

7/25/2022
Date

B. Rickard
Acting Warden

To:

From: Ruby Mayse

Re: Antoine Mayes, 78351-053

Dear Sir or Madam:

My name is Ruby Mayes and My son is Antoine Mayes.  He is currently housed at Allenwood CF. Antoine has been incarcerated for 11 years of his Life sentence.  I know that my son truly regrets his actions and the harm he has caused. I do not excuse his behavior.  However, I write in support for release of my son from incarceration.

Four years ago, my husband and father of Antoine and his brother committed suicide.  Since his tragic passing I have been left all alone as both my sons are currently incarcerated.  So much has been lost and I would be forever grateful to be reunited with my rehabilitated son.  I am 63 years of age and I truly feel lost without my family.  We are trying to stay strong for his children.

Antione has always helped me and before he was incarcerated and he was taking care of his twin boys.  When release Antoine will not return to society empty-handed.  He is taking classes and gaining productive skills.  He took a Law Course with Blackstone.  He plans to take more courses as restrictions lift from the Pandemic.

Antoine has a total of four children including twins.  He will be a full-time dad.  My son wants to make sure his children receive a quality education and all go on to do great things.  Since being incarcerated he has stayed out of trouble and the prison guards always speak highly of him.

(List of Accomplishments needed.}

Upon release he will reside with me at _____ and he will be employed with/by_____

I thank you for hearing my plea for the release of my son Antoine.

Respectfully,

Ruby Mayes

No. 05-CR-596(1) (ARR)

UNITED STATES DISTRICT COURT EASTERN DISTRICT OF NEW YORK

# United States v. Reid

Decided Mar 5, 2021

No. 05-CR-596(1) (ARR)

03-05-2021

UNITED STATES OF AMERICA, v. RODNEY REID, Defendant.

ROSS, United States District Judge

## Opinion & Order

:

Defendant, Rodney Reid, moves for a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1) (A)(i) on the grounds that his current 119-year sentence "is unconscionably long and would not be imposed under today's law." Def.'s Mot. Sentence Reduction 7 ("Def.'s Mot."), ECF No. 175 (capitalization omitted)[1]. Mr. Reid also argues that his rehabilitation efforts combined with the harsh prison conditions and risks associated with the COVID-19 pandemic further warrant reduction. *Id*. at 12-14. The government opposes on the grounds that Mr. Reid's motion fails because he has not exhausted all administrative remedies and because a "purely legal injur[y]" is an improper basis for sentence reduction under § 3582(c)(1)(A). Gov't's Opp'n 8-9, ECF No. 177.

[1] Unless otherwise indicated, all docket cites are to *United States v. Reid*, No. 05-CR-596(1).

For the reasons set forth below, I find that Mr. Reid has proved his case for sentence reduction and impose a new sentence of twenty-one years' imprisonment followed by five years' supervised release with special conditions as set forth in the annexed amended judgment. *2

## BACKGROUND

In the fall of 2002, defendant, Rodney Reid, and his co-defendant, Sean Chaney, spearheaded a series of robberies. Presentence Investigation Report ¶ 2 ("PSR"). Mr. Reid and Mr. Chaney organized the crimes and carried them out with the help of additional accomplices. *Id*. ¶ 15. Mr. Reid was the primary "organizer" of the robberies. *Id*. ¶ 16. He typically acted as the getaway driver, waiting outside while the others robbed the stores, and supplied a gun for their use. *Id*. ¶¶ 15-16; Gov't's Opp'n Rule 33 Mot. 2, ECF No. 134 (filed under seal). Several victims were injured as a result of Mr. Reid and Mr. Chaney's crimes; Mr. Chaney personally beat and kicked shopkeepers, struck them in the head and, in one instance, "attempted to kill" a shopkeeper by firing bullets in his direction. Gov't's Sentencing Mem. 2-3, *United States v. Chaney*, No. 05-CR-596(2) (ARR) ("*Chaney* Docket"), ECF No. 103 (E.D.N.Y.); PSR ¶¶ 20-23. Fortunately, none of the victims suffered long-term injuries. Def.'s Mot. 7.

Mr. Reid and Mr. Chaney were arrested on December 13, 2002, after robbing a Melissa Check Cashing store in Jamaica, New York. PSR ¶ 23. Police arrived at the scene and followed Mr. Reid and Mr. Chaney to their hotel room. *Id*. After an eight-hour standoff, the two men surrendered and were arrested. *Id*. Police found a machine gun and handguns, ammunition, $12,900 along with burnt pieces of money and other papers from the Melissa Check Cashing store, and cash and credit cards belonging to a store employee. *Id*. ¶ 24. Mr. Reid was tried and convicted by a jury in Queens

casetext

Supreme Court and sentenced to ten years' imprisonment. *Id.* ¶ 25. During his trial, he asked Mr. Chaney to testify falsely on his behalf and threatened another witness with violence to do the same. *Id.*; Gov't's Opp'n Rule 33 Mot. 3-4. Mr. Chaney, for his part, was sentenced to five years' imprisonment by the Queens Supreme Court. Presentence Investigation Report ¶ 62 ("PSR"), *Chaney* Docket, ECF No. 165 (filed under seal).

3      *3

On August 3, 2005, a grand jury indicted Mr. Reid and Mr. Chaney on federal charges connected with the robberies. Indictment, ECF No. 1. Mr. Chaney pleaded guilty pursuant to a plea agreement in which the government "significantly miscalculated" the sentencing guidelines, resulting in a sizable discrepancy between the government's recommendation of thirteen-to-fourteen years' imprisonment and the Presentence Investigation Report's recommendation of roughly thirty years' imprisonment. Crim. J. 1, *Chaney* Docket, ECF No. 109; Gov't's Sentencing Mem. 1, *Chaney* Docket; Sentencing Tr. 10, *Chaney* Docket, ECF No. 123; PSR ¶ 82, *Chaney Docket*. During Mr. Chaney's sentencing hearing, the government explained that although it had miscalculated the guidelines, it stood by its recommendation due to its obligation to engage in "fair dealing" and because of three § 3553(a) factors, namely Mr. Chaney's young age, "the influence of Rodney Reid,"[2] and Mr. Chaney's difficult family circumstances. Sentencing Tr. 10-12, *Chaney* Docket. On December 18, 2006, I sentenced Mr. Chaney to 166 months' imprisonment to run consecutively with his undischarged five-year state sentence for the Melissa Check Cashing store crimes,[3] followed by five years' supervised

4      release. Crim. J. 3, 5, *4 *Chaney* Docket. Mr. Chaney was released from prison on February 9, 2021, having spent just under twenty years in custody for his state and federal convictions. Bureau of Prisons ("BOP"), *Inmate Locator*, http://www.bop.gov/inmateloc/ (last visited Mar. 1, 2021) ("Inmate Locator").

2  The government acknowledged that Mr. Reid's influence did not warrant a "huge benefit" to Mr. Chaney because "many of his actions were undertaken without Rodney Reid present, such as the attempted murder" of one of the victims. Sentencing Tr. 10, *Chaney* Docket.

3  Pursuant to his plea agreement with the government, Mr. Chaney did not plead guilty to counts related to the Melissa Check Cashing store robbery. Crim. J. 4, *Chaney* Docket; Sentencing Tr. 12-13, *Chaney* Docket. Therefore, his federal sentence was imposed consecutively to his state sentence for the Melissa Check Cashing store crimes because the conduct underlying that sentence was not "relevant conduct to the instant offense of conviction." U.S. Sentencing Comm'n, U.S. Sentencing Guidelines Manual § 5G1.3(b) ("U.S.S.G.") (providing that if "a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction . . . the sentence for the instant offense shall be imposed as follows: (1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and (2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment").

The government offered Mr. Reid a plea deal with a guidelines range of sixteen to seventeen years' imprisonment, but he chose to go to trial. Def.'s Mot. 1-2. As with his state trial, Mr. Reid "repeatedly sought to obstruct justice, suborn perjury and threaten[] witnesses against him both before and after their testimony," including threatening to have one witness "attacked at the

[Metropolitan Detention Center] and killed if deported to Jamaica." Sentencing Tr. 11-12, ECF No. 146.

On July 27, 2006, Mr. Reid was convicted by a jury of one count of Hobbs Act Conspiracy, multiple counts of Hobbs Act Robbery, one count of discharging a firearm during a crime of violence, and multiple counts of brandishing a firearm during a crime of violence. Jury Verdict (July 27, 2006); Crim. J. 1-2, ECF No. 139. I subsequently sentenced Mr. Reid to 1,434 months —or 119.5 years—of imprisonment. Crim. J. 3. In sentencing Mr. Reid, I was constrained by the then-mandatory stacking provision of 18 U.S.C. § 924(c)(1)(C), which required me to impose an 84-month sentence for the first 924(c) count, followed by 300-month consecutive sentences for each of the four remaining 924(c) counts, to run consecutively to the 150-month sentence[4] imposed for the Hobbs Act counts. Crim. J. 4; Sentencing Tr. 29-30. At the time, I expressed my discomfort with the severity of Mr. Reid's sentence, stating, "I have never imposed a sentence anywhere near this or seen a situation like this; and it makes it very difficult *5 to be in my position. Having said that, unless I'm wrong about the law, I don't really think I have many choices." Sentencing Tr. 19.

> [4] Pursuant to U.S.S.G. § 5G1.3(b), I adjusted Mr. Reid's sentence for the Hobbs Act counts downward by sixty months to account for the time that he had already served in state custody for "relevant conduct" because this time would not otherwise have been credited by BOP. Sentencing Tr. 29; U.S.S.G. § 5G1.3(b)(1)-(2).

Mr. Reid has been incarcerated since December 14, 2002 and currently resides in U.S.P. Victorville in Pennsylvania. PSR ¶ 155; Inmate Locator. In the past eighteen years, he has incurred seven disciplinary infractions, with the most recent offense—destroying an item by swallowing it during an officer's attempt to search him—occurring in 2018. Disciplinary Record, ECF No.

177-1. Mr. Reid has also made rehabilitative efforts over the years. Since 2014, he has completed more than eighty-four educational courses. BOP Progress Report, Def.'s Mot. Ex. B, ECF No. 175. He has earned sufficient "points" to be transferred to a medium-security prison but has not yet been moved due to restrictions related to the COVID-19 pandemic. Def.'s Mot. 12-13.

## LEGAL STANDARD UNDER THE FIRST STEP ACT

### I. Sentence Reduction

The First Step Act allows criminal defendants to move for "[m]odification of an imposed term of imprisonment" before a federal sentencing court. 18 U.S.C. § 3582(c). To qualify for such relief, defendants must show: (1) that they have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [their] behalf," or that thirty days have lapsed "from the receipt of such a request by the warden of [their] facility, whichever is earlier"; (2) that "extraordinary and compelling reasons warrant" a reduction in the term of imprisonment; (3) that these reasons outweigh "the factors set forth in section 3553(a) to the extent that they are applicable"; and (4) that a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission." *Id*. § 3582(c)(1) (A); *United States v. Anderson*, No. 18-CR-71 (RJA), 2021 WL 776975, at *1 (W.D.N.Y. Mar. 1, 2021) ("It is a defendant's burden to *6 show that he or she is entitled to a sentence reduction under the [compassionate release] statute") (quotation omitted).

Accordingly, in determining what constitutes "extraordinary and compelling reasons," a district court has "discretion" to consider "the full slate" of arguments that defendants present to support a sentence reduction. *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). "The only statutory limit on what a court may consider to be extraordinary and compelling is that

'[r]ehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason.'" *Id.* at 237-38 (quoting 28 U.S.C. § 994(t)).

The Sentencing Commission's policy statement explicating "extraordinary and compelling reasons" under § 3582(c) is not binding on a district court, *see id.* at 237, but it does provide some guidance. Where a defendant seeks a sentencing modification due to medical conditions, the Sentencing Commission suggests that "extraordinary and compelling reasons" may exist in two scenarios: first, where "[a] defendant is suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia"; and second, where "[a] defendant is . . . suffering from a serious physical or medical condition, . . . suffering from a serious functional or cognitive impairment, or . . . experiencing deteriorating physical or mental health because of the aging process" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which [the defendant] is not expected to recover." U.S.S.G. § 1B1.13 cmt. 1(A)(i)-(ii) (2018).

Extraordinary and compelling reasons may also exist based on "family circumstances," for example in the event of "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or "[t]he incapacitation of the defendant's spouse or registered partner *7 when the defendant would be the only available caregiver for the spouse or registered partner." *Id.* cmt. 1(C). In any scenario, "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." *Id.* cmt. 2.

Even if extraordinary and compelling reasons exist, they must outweigh the 18 U.S.C. § 3553(a) factors to warrant sentence reduction. *See* 18 U.S.C. § 3582(c)(1)(A). These factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and sentencing range [provided for in the U.S.S.G.] . . . .

(5) any pertinent [Sentencing Commission] policy statement . . . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

*Id.* § 3553(a).

A sentence reduction is consistent with the Sentencing Commission's policy statements if "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." 18 U.S.C. § 3582(c)(1)(A)(ii). The § 3142(g) factors are largely duplicative of those in § 3553(a), but they also include "whether the offense is a crime of violence" and "the weight of the evidence against the [defendant]." 18 U.S.C. § 3142(g)(1)-(4).

**II. Elimination of the Stacking Provision**

The First Step Act also eliminated the stacking provision of 18 U.S.C. § 924(c)(1)(C), which mandated that a defendant convicted of multiple counts of § 924(c) charges was subject to mandatory consecutive twenty-five-year sentences for each subsequent § 924(c) charge. *See* *8 *United States v. Marks*, 455 F.Supp.3d 17, 20 (W.D.N.Y. 2020). Congress did not make this change retroactive. *Id.* at 21. However, courts have found that defendants who were sentenced under the old stacking provision may still seek sentence reduction under 18 U.S.C. § 3582(c)(1)(A). *See* *United States v. Haynes*, 456 F.Supp.3d 496, 515 (E.D.N.Y. 2020) (citing *United States v. O'Bryan*, No. 96-CR-10076 (JTM), 2020 WL 869475, at *1 (D. Kan. Feb. 21, 2020) ("[T]he fact that the [First Step Act] changes in § 924(c) were not explicitly retroactive is relevant [but] ultimately has little bearing on whether the court is empowered to act under Section 3582, because [i]t is not unreasonable for Congress to conclude that not *all* defendants convicted under § 924(c) should receive new sentences, even while expanding the power of the courts to relieve *some* defendants of those sentences on a case-by-case basis.") (quotations omitted)).

## DISCUSSION

### I. Administrative Exhaustion

In order to obtain a sentence reduction under 18 U.S.C. § 3582(c)(1)(A), Mr. Reid must first show that he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf," or that thirty days have lapsed "from the receipt of such a request by the warden of [his] facility, whichever is earlier." § 3582(c)(1)(A). Mr. Reid alleges that he submitted a *pro se* request to the warden in April 2020 and a follow-up request on September 18, 2020. Def.'s Reply 1-2, ECF No. 178. These requests were handwritten on paper because inmates were on lockdown without access to TruLincs computer system due to the pandemic. *Id.* at 2. Mr. Reid's facility, USP Victorville, was unable to locate these requests. Gov't's Opp'n 8.

On January 19, 2021, Mr. Reid's counsel submitted another request for sentence reduction to the warden via e-mail. Request for Compassionate Release, Def.'s Reply Ex. A. *9

Although the government argues that Mr. Reid's earlier handwritten requests cannot be verified,[5] he has now satisfied the exhaustion requirement because more than thirty days have lapsed since his renewed request via counsel on January 19, 2021. The fact that Mr. Reid submitted his renewed request *after* filing the instant motion does not affect the outcome of his case; if he were to file an identical motion for sentence reduction today, there would be no question as to whether he had fulfilled his requirement. Requiring him to do so would waste time without serving the purposes of the statute. *See Reiter*, 2020 WL 4252681, at *3 ("Requiring inmates to exhaust their administrative remedies before seeking court intervention . . . protects administrative agency authority by guaranteeing agencies the opportunity to correct [their] own mistakes [and] promotes efficiency, since claims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court") (quotations omitted). Therefore, because more than thirty days have lapsed without any response from BOP, I find that Mr. Reid's motion may proceed.

---

5  The fact that BOP cannot locate Mr. Reid's handwritten requests does not necessarily mean that Mr. Reid has provided insufficient proof of exhaustion. At least one court in this circuit has looked to whether a defendant has: "(1) provide[d] a copy of his request to BOP, (2) state[d] the date on which he made the request to BOP, (3) provide[d] evidence that the Warden received such a request, *or* (4) provide[d] a copy of the Warden's response." *United States v. Reiter*, No. 87-CR-132 (VSB) 2020 WL 4252681, at *3 (S.D.N.Y. July 23, 2020) (emphasis added); *see also*, *United States v. Walters*, No. 16-CR-339 (RMB), 2020 WL 6157008, at *2

(S.D.N.Y. Oct. 21, 2020). Here, Mr. Reid did state the dates on which he made his initial requests. I need not decide whether this is sufficient proof of exhaustion because he has since provided a copy of his most recent request, which occurred more than thirty days ago.

## II. Extraordinary and Compelling Reasons

Mr. Reid argues that the harshness of his current sentence constitutes an extraordinary and compelling reason for sentence reduction. Def.'s Mot. 7-12. In opposition, the government argues that even under *Brooker*, the court's authority to grant sentence reduction is limited to *10 grounds that are identical to or at least "categorically similar to . . . those set forth in § 1B1.13." Gov't's Opp'n 10. Relying primarily on the Seventh Circuit's decision in *United States v. Gunn*, 980 F.3d 1178 (7th Cir. 2020), the government contends that Congress did not intend that § 3582(c)(1)(A) provide relief for "purely legal injuries" such as the harsh mandatory sentence imposed on Mr. Reid. Gov't's Opp'n 9. The government further argues that the First Step Act does not provide a mechanism for granting release based on arguments that were or could have been raised on direct appeal or in a § 2255 motion. *Id.* at 10 (citing three cases decided before the Second Circuit's decision in *Brooker*: *United States v. Handerhan*, 789 F.App'x 924, 926 (3d. Cir. 2019); *United States v. Arojojoye*, 806 F.App'x 475, 477-78 (7th Cir. 2020); *United States v. Rivernider*, No. 10-CR-222 (RNC), 2020 WL 597393, at *4 (D. Conn. Feb. 7, 2020)).

The government's argument runs afoul of binding precedent in *Brooker*. There, the Second Circuit clearly stated that nothing "in the now-outdated version of Guideline § 1B1.13[] limits the district court's discretion." 976 F.3d at 237. There is no indication that "purely legal injuries" that could have been raised in habeas petitions or direct appeals should be excluded from this discretion. Gov't's Opp'n 9. To the contrary, "the First Step Act freed district courts to consider the *full slate*

of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *Brooker*, 976 F.3d at 237 (emphasis added). Indeed, courts in many districts—including this one—have found that an overly long punishment imposed under the obsolete § 924(c) stacking provision constituted an extraordinary and compelling reason for sentence reduction. *See, e.g.*, Order Adopting R. & R., *United States v. Anglin*, No. 98-CR-1124 (ERK) (E.D.N.Y. Nov. 18, 2020); *United States v. Davis*, No. 96-CR-912 (ERK), 2020 WL 6746823, at *2 (E.D.N.Y. Nov. 17, 2020); *Haynes*, 456 F.Supp.3d at 514-15; *Marks*, 455 F.Supp.3d at 25; *United States v. Baker*, 10-CR-20513 (GCS), 2020 WL *11 4696594, at *3 (E.D. Mich. Aug. 13, 2020); *United States v. Brown*, No. 01-CR-196 (JPS), 2020 WL 4569289, at *4 (E.D. Wis. Aug. 7, 2020); *United States v. Redd*, 444 F.Supp.3d 717, 723-24 (E.D. Va. Mar. 15, 2020); *O'Bryan*, 2020 WL 869475, at *1; *United States v. Maumau*, No. 08-CR-758 (TK), 2020 WL 806121, at *7 (D. Utah Feb. 18, 2020); *United States v. Urkevich*, No. 03-CR-37 (LSC), 2019 WL 6037391, at *4 (D. Neb. Nov. 14, 2019).

In keeping with this growing consensus, I find that Mr. Reid's unconscionably long sentence is an extraordinary and compelling reason justifying sentence reduction. Mr. Reid was subject to a mandatory 100-year sentence enhancement—tantamount to a death-in-prison sentence—that would not be imposed under today's law. At the time, I had no choice. Now, the law permits me to resentence Mr. Reid to a term of imprisonment that is "sufficient, but not greater than necessary" to serve the interests of justice. 18 USC § 3553(a).

Mr. Reid further argues that his case for sentence reduction is strengthened by the harsh prison conditions and health risks associated with COVID-19. While I acknowledge that COVID-19 poses a serious threat to the health and wellbeing of federal prisoners, I have found that compassionate release is not justified in cases where the defendant is not at a particularly high

risk of severe illness or death from contracting the virus. *United States v. Figueroa*, No. 15-CR-495 (ARR), 2021 WL 664004, at *3 (E.D.N.Y. Feb. 19, 2021); *United States v. Dekattu*, No. 18-CR-474 (ARR), 2020 WL 7711842, at *2 (E.D.N.Y. Dec. 29, 2020). *See also United States v. Turnbull*, No. 16-CR-809 (VM), 2020 WL 5089439, at *1 (S.D.N.Y. Aug. 28, 2020) ("Numerous courts have found that the risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release, absent additional factors such as advanced age or serious underlying health conditions that place a defendant at greater risk of negative complications from the disease."); *United States v. Washington*, No. 14-CR-215 (LJV), 2020 WL *12 1969301, at *4 (W.D.N.Y. Apr. 24, 2020) (finding no extraordinary and compelling reasons for release when the defendant submitted no medical evidence showing that COVID-19 posed an increased risk to him, despite the presence of COVID-19 at defendant's facility); *United States v. Pinto-Thomaz*, 454 F. Supp. 3d 327, 329-30 (S.D.N.Y. 2020) (recognizing that concerns about the spread of COVID-19 in a crowded prison were justified but finding no extraordinary and compelling reasons when the defendants were "no different from a host of other prisoners" and absent evidence of widespread transmission in the defendants' facilities).

Mr. Reid has not alleged that he suffers from a high-risk health condition, nor is he a member of a high-risk age group. *See Older Adults*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last updated Feb. 26, 2021). Absent any factors placing Mr. Reid at a particularly high risk of serious illness, I cannot conclude that the health risks associated with COVID-19 constitute an extraordinary and compelling reason for reducing his sentence. My rejection of this claim, however, does not affect the outcome of his motion, however, as I have already found that his harsh sentence is an extraordinary and compelling reason on its own.

### III. Appropriate Relief Under the 18 U.S.C. § 3553 Sentencing Factors

Before granting a motion for sentence reduction, the court must determine whether the defendant poses "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," U.S.S.G. § 1B1.13(2), and must consider "the factors set forth in section 3553(a)." 18 U.S.C. § 3582(c)(1)(A). These factors favor reducing Mr. Reid's sentence. Although Mr. Reid's crimes of conviction—as well as his threats of violence against testifying witnesses—were extreme, they do not warrant a 119-year sentence. Reducing Mr. Reid's sentence so that it complies with current law instead of an outdated and unjust sentencing *13 scheme would "promote respect for the law," "provide just punishment for [his] offense[s]," and fulfill "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(2)(A), (a)(6).

Furthermore, in the eighteen years that Mr. Reid has been incarcerated, he has shown that he is working toward becoming a better person. He has completed more than eighty-four educational courses since 2014,[6] BOP Progress Report, and has earned "sufficient 'points' to be transferred to a medium-security institution," Def.'s Mot. 13. Mr. Reid also has loving family members who are willing to support him outside of prison. Letters from Family Members, Def.'s Mot., Ex. C; Def.'s Reply, Ex. B. In his own words, Mr. Reid writes that "there are not enough words in the human language that could ever possibly delineate the remorse I have looking back at the lifestyle and associations prior to my incarcerations," and that "[t]he man I am today in 2021 is worlds apart from that young man." Def.'s Reply, Ex. C.

---

[6] Mr. Reid "has also completed multiple educational courses while at previous institutions" between 2002 and 2014, but

these records are unavailable. BOP Progress Report 3.

Mr. Reid argues that these factors warrant a sentence reduction to time served, which would result in his immediate release. Def.'s Reply 7. The government maintains that his sentence should not be reduced at all but contends that in the event that I grant his motion, I should sentence him to at least thirty-eight years' imprisonment. Gov't's Opp'n 11. The government is correct that under the current § 924(c) sentencing scheme, Mr. Reid would be subject to five mandatory consecutive sentences amounting to a total of thirty-eight years: four seven-year sentences and one ten-year sentence for the firearm discharge count.[7] Def.'s Mot. 10. *14 However, § 3582(c)(1) (A)(i) permits me to reduce Mr. Reid's sentence to an amount lower than the mandatory minimum. *See Brooker*, 976 F.3d at 230, 238 (permitting the district court to grant compassionate release to a defendant serving a fifteen-year mandatory minimum sentence).

> [7] In 2005, I sentenced Mr. Reid to 150 months' imprisonment on the Hobbs Act counts to run consecutively to the § 924(c) counts. Crim. J. 4. However, current law permits me to shorten his Hobbs Act sentence to as little as one day. In *Dean v. United States*, which was decided after Mr. Reid's initial sentencing, the Supreme Court held that "a district court does not violate the terms of § 924(c) so long as it imposes the mandatory minimum in addition to the sentence for the violent . . . crime," whether that sentence is "one day or one decade." 137 S.Ct. 1170, 1177 (2017). Therefore, if Mr. Reid were sentenced today, the minimum sentence would be thirty-eight years and one day.

Mr. Reid encourages me to consider the disparity between his and Mr. Chaney's sentences in calculating a reduced sentence. Def.'s Reply 8-9. Although 18 U.S.C. § 3553(a)(6) "requires a district court to consider nationwide sentence disparities, but does not require a district court to consider disparities between co-defendants," *United States v. Frias*, 521 F.3d 229, 236 (2d Cir. 2008), many courts have looked to the disparity between co-defendants in granting sentence reduction in § 924(c) stacking cases. *See, e.g.*, *Haynes*, 456 F. Supp. 3d at 499; *Davis*, 2020 WL 6746823, at *2. The government, in support of its recommendation of a thirty-eight-year sentence, argues that an eighteen-year disparity between the sentences imposed on Mr. Reid and Mr. Chaney is warranted because Mr. Reid played a leadership role and did not plead guilty. Gov't's Opp'n 12. I disagree and find that a sentence of thirty-eight years' imprisonment is too long. However, I also find that the defense's recommendation of time served is too lenient. I am unpersuaded by Mr. Reid's argument that he is less culpable because, unlike Mr. Chaney, he did not personally commit any acts of violence. Mr. Reid obstructed justice, provided weapons for use in carrying out the robberies and, as the defense concedes, was the primary organizer. Def.'s Reply 9. He should not be rewarded for attempting to distance himself from detection by assuming the role of the getaway driver. Furthermore, Mr. Reid's repeated references to Mr. Chaney's fourteen-year sentence are somewhat misleading because they do not *15 account for the fact that Mr. Chaney's federal sentence ran consecutively to his five-year state sentence; in fact, Mr. Chaney served almost twenty years in prison for his crimes.

I find that a reduced sentence of twenty-one years' imprisonment is sufficient but not greater than necessary to "promote respect for the law," "provide just punishment for [his] offense[s]," and fulfill "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(2)(A), (a)(6). With a federal sentence of twenty-one years, Mr. Reid will end up serving a total of roughly twenty-three to

twenty-four years in federal and state prison for his crimes,[8] assuming that he earns full credit for good conduct going forward.[9]

[8] This calculation includes the time Mr. Reid served for his state sentence. With hindsight, I now know that the BOP did not credit the approximately five years he spent in state custody and began running the clock on his federal sentence on December 18, 2007. BOP Progress Report 1.

[9] A representative from U.S. Probation Services confirmed that Mr. Reid has earned 475 days of good conduct credit so far and will earn 54 credits per year going forward as long as he does not incur any disciplinary infractions.

## CONCLUSION

For the foregoing reasons, I grant Mr. Reid's motion for sentence reduction and sentence him to 252 months' imprisonment followed by 5 years' supervised release. I impose several special conditions to this period of supervised release, including three months of home confinement with location monitoring, a restitution amount of $9,000.00, a special assessment amount of $1,100.00, and search and financial disclosure provisions, all as set forth in the annexed amended judgment. SO ORDERED.

/s/ _____

Allyne R. Ross

16    United States District Judge *16 Dated: March 5, 2021

Brooklyn, New York


casetext

Second Chance 4 R.E.A.L.
Tommy Walker
*Certified Paralegal*
Ph: (716) 348-9861
2ndChance4r.e.a.l@gmail.com
P.O. Box 514 • Buffalo, NY 14215-0514

U.S. POSTAGE PAID
FCM LG ENV
BUFFALO, NY
14215
OCT 08 22
AMOUNT
$2.16
R2304E107221-92

1000    11201

U.S. Courthouse Eastern District New York
225 Cadman Street
Brooklyn, N.Y. 11201

USMS